No. 28.—JOSEPH BRANAN, plaintiff in error, *vs.* PLEASANT J. MAY, defendant in error.

[1.] To maintain an action for an injury received from an obstruction in a highway, two things must concur : an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it, on the part of the plaintiff.

*Case*, in Taylor Superior Court.   Tried before Judge CRAW-FORD, October Term, 1854.

This was an action by May against Branan, for the value of two mules, alleged to have been drowned by reason of defendant's digging a mill-race across the public highway, without authority of law.

The Court below admitted evidence of the use of the road as a public highway.   Defendants excepted, insisting that there was higher evidence—the order of the Inferior Court.   This is the first error assigned.

It appeared that May was travelling in a carriage with two mules, and a negro boy as driver.   When the mules came to the bridge across the race, they stopped.   The negro boy got down and examined the bridge, and reported that there were some holes in it.   May then ordered the boy to drive up the race, to the left of the bridge.   The mules again refused to go on.   May ordered the boy again to examine, and he reporting

the water to be only "ankle deep," he ordered the mules to be driven in.    The race was deeper than reported.    The tongue of the carriage stuck into the opposite bank; the breast-chains pulled the mules' heads under the water and they were drowned. This was a little out of the old road, where the race crossed it.

The question was, whether, under these facts, the plaintiff exercised ordinary diligence to avoid the obstructions.    The Court below held that he had, and this is the controlling question in the cause.

Other questions were raised, and other exceptions filed, unnecessary to be repeated here.

G. R. HUNTER, for plaintiff in error.

S. HALL, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The rule of law regulating this action, requires that two things should concur to support it: An obstruction in the road by the fault of the defendant; and no want of ordinary care to avoid it, on the part of the plaintiff.    (*Butterfield vs. Forester*, 11 *East. R.* 60.    *Bridge vs. Grand. Junction, &c.* 3 *M. & W.* 248.    1 *M. & G.* 568.)

This was a public road existing by prescription; and consequently, required no written authority, emanating from the Inferior Court, to prove its existence as a highway.    It is not denied but that the mill-race was dug across it by the defendant, and that too, without authority of law to do it.    The first branch of the case is therefore made out, to-wit: an obstruction in the road by the fault of the defendant; and it only remains to inquire, whether or not the plaintiff exercised ordinary care to avoid it?

He directed his servant, in the first place, to examine the bridge across the race, to ascertain whether it could be passed, and found that the holes made by the slipping of the plank,

rendered the attempt dangerous.   He then turned aside, intending to cross at another place; and again the driver is made to dismount and explore the condition of things, who reports that it is entirely safe and easy to cross, as the water was not ankle deep.   He forces the reluctant mules to make the effort, and they are drowned—the instincts of these *long-eared* animals being more unerring than the boasted wisdom of man. By a precipitous plunge the end of the tongue or pole was fastened in the opposite bank, and the heads of the mules being held down by the breast-chains, they could not be extricated in time to save their lives.

Could the master, then, acting upon the information of his servant, be considered as having exercised ordinary care?   He did but follow the common practice of the country.   Is it not the universal custom, in pursuing a journey, when an obstruction occurs, to consult the driver, and to act upon his opinion? And if this be the common practice, Mr. May could not be said to be wanting in ordinary care in following it.

It may not be amiss to take this occasion to suggest, that every unauthorized change of a public road, in this State, (and nothing is more usual,) subjects the persons to the consequences which have been visited upon this defendant.   How common is it, in clearing a new-ground, to run the fence on the old road, and to compel the travelling public to wear down the stumps and other obsructions in the new?   Land proprietors would do well to take heed to their *ways*, in this respect, and in reference to this clear legal liability.   And let it not be said, as has been falsely charged, as to other decisions, that this is some new-fangled doctrine originating with this Court.   It is laid down in *Serj. Carthew*, who reported, in the reign of King James, that if a man lay logs of wood across a highway, *though a person may, with care, ride safely by*, yet, if by means thereof, my horse stumble and fling me, I may bring an action. (*Carth.* 194, 457.   See, also, *Buller's Nisi Prius*, 26.)   But the modern rule is more lenient; and notwithstanding the defendant be in fault, it does not dispense with another's using ordinary care and caution for himself.