No. 96.—The Macon & Western Rail Road Company, plaintiffs in error, *vs.* James M. Davis, administrator of Willis Boon, deceased, defendant in error.

[1.] When a plaintiff declares, as executor or administrator upon a cause of action arising in the lifetime of his testator or intestate, and makes profert of the probate or letters of administration, the defendant cannot, at the trial, deny the title of the plaintiff, as executor or administrator, unless there be a plea of *ne unques executor*, or *ne unques administrator*.

[2.] Where a plaintiff declares on a cause of action arising in his own time, and makes profert of the probate or letters of administration, and the defendant pleads the general issue, such plea does not admit the plaintiff's title as executor or administrator.

[3.] Where the executor or administrator has been in *actual* possession of the property which is the subject of the suit, it will not be necessary for him to give evidence of his title, as executor or administrator, in an action

against a wrong-doer; and in such case, the naming him executor or ad-
ministrator, in the declaration, may be regarded as mere surplusage.

[4.] Where, however, the plaintiff declares upon his constructive possession,
he must show his title at trial.

[5.] The proprietors of rail roads, when running their engines over cross-
ings, must use reasonable care and diligence, taking into consideration all
the circumstances of the case; and whether there has been negligence or
not, depends upon the facts of each particular case, and the question is to·
be decided by the Jury; and, notwithstanding the plaintiff may not be
without fault, still, if the injury could have been prevented, in the exercise·
of proper and reasonable precaution on the part of the defendant, and
was not, the defendant will be liable.

Case, in Bibb Superior Court.    Tried before Judge Pow-
ERS, May Term, 1855.

This was an action on the case, brought by the defendant
in error, James M. Davis, as administrator of Willis Boon,
deceased, against the plaintiff in error, to recover the value
of a negro man slave, and a rockaway carriage.

It appeared in evidence, that on the 14th day of Decem-
ber, 18—, the engine and cars of the defendant run over and
killed and destroyed the said slave and carriage, at a public
crossing over said rail road, at or near Prattsville, in the
County of Monroe.    It further appeared, that Mrs. Winn,
who was in the carriage at the time, with her four children,
saw and heard the train of cars before the carriage reached
the crossing; and when she got near it, directed the driver
to stop until the train passed; the driver refused to stop,
and attempted to cross before the train.    The mules attached
to the carriage stopped on the rail road track and refused to
move; and in that situation, they were run over by the en-
gine.    It also appeared in evidence that the engine and train
were going at full speed when Mrs. Winn saw it approach-
ing; that it was going an up-grade, and that the carriage
could have been seen two hundred yards, as it approached
the crossing.    If the driver had obeyed the instructions of
Mrs. Winn to stop, the injury would not have occurred.

Plaintiff failed to prove that he was the administrator of Willis Boon, to whom the negro and carriage belonged, though it was alleged and proved that the injury happened after the death of the intestate.

Plaintiff in error filed the following assignment of errors upon the bill of exceptions:

1st. The Court erred in refusing to charge the Jury, that the plaintiff could not recover without proving that he was the administrator of Willis Boon, deceased.

2d. In instructing the Jury that if the carriage of plaintiff, in passing along the highway, was voluntarily stopped, and blocked up that portion of the road crossed by the rail road, then it was not rightfully on the road.

3d. In instructing the Jury, "that the conductors and engineers are bound to use the utmost skill and diligence to prevent accidents at crossings; and if, by their negligence, an injury happens, such negligence is gross and the company are liable."

4th. In deciding and instructing the Jury, " that in view of the great danger attending the running of cars and engines, the care and skill in conducting them must be in proportion to the danger."

5th. In instructing the Jury, that " it is the duty of the defendants, when approaching a public crossing, to have the engine and train under the control of its managers, so that if persons are there, it is possible to stop; and if, from any cause originating in their management, a public crossing is approached with an uncontrollable engine and train, the negligence is gross, and the company are liable."

6th. In instructing the Jury, " that it was the duty of the engineer so to manage and check his engine as to have it under his control, so that he could stop it and prevent its running against the carriage while on the road; and if, for any cause, this was impossible, it was the duty of the defendant to prove such impossibility; and if they have not, they are liable."

7th. The Court erred in failing, altogether, to state the evidence of the defendant in summing up the evidence to the Jury.

8th. That the instructions of the Court to the Jury, upon the skill and diligence necessary to be exercised by the defendant in the action, are contradictory.

9th. The Court erred in deciding that the name of Thomas Dougherty should be stricken from the Grand Jury list before striking, because he was in the employment of the company in their workshop, but not on the road.

10th. The Court erred in refusing to allow defendant's Counsel to argue that plaintiff had failed to make out his case, because he had failed to prove that he was the administrator of Willis Boon.

11th. The Court erred in instructing the Jury, "that greater care was necessary in crossing near a church;" there being no evidence that this crossing was near a church.

COLE; NISBET, for plaintiffs in error.

WHITTLE; S. T. BAILEY, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The first exception being waived as to the rejection of the Juror, Thomas Dougherty, for cause, and the last, also, as to the failure of the Court to sum up, fully, we proceed to notice the remaining assignments of error.

[1.] As the plaintiff failed to show that he was in the actual possession of the property for the injury to which the suit was brought, and relies upon constructive possession only, he was bound to prove his title on the trial. Such was the opinion of this Court in *Robinson against McDonald*, (2 *Kelly*, 116,) and such is the well established doctrine of the books upon this subject.

Where the plaintiff declares, as executor or administrator,

upon a cause of action, arising in the time of his testator or intestate, and makes profert of the probate or letters of administration, the defendant cannot, at the trial, deny the title of the plaintiff as executor or administrator, unless there be a plea of *ne unques executor* or *ne unques administrator*.

[2.] But where the plaintiff declares on a cause of action *arising in his own time,* and makes profert of the probate or letters of administration, and the defendant pleads the general issue, such plea did not formerly, nor until the rules adopted during the reign of IV*th William,* admit the plaintiff's title as executor or administrator.

[3.] Where the executor or administrator has been in the *actual* possession of the property which is the subject of the suit, it will not be necessary for him to give evidence of his title, as executor or administrator, in an action against a wrong-doer. And in such case, the naming himself executor or administrator in the declaration, may be regarded as mere surplussage.

[4.] However, where the plaintiff declares upon his *constructive* possession, as executor or administrator, he must show his title at the trial.

These are the general rules deduced from *Mr. Williams on Executors* and other elementary works upon pleading. And inasmuch as Mr. Davis sued, as the administrator of Boon, for damage done to the property in his own time, and made profert of his letters, he was bound to make out his case by exhibiting his authority, there being no proof that the property was in his possession at the time the injury accrued. And he was not relieved from this necessity, because the defendant's Counsel omitted to take this point in his opening speech, as it was his duty to have done, when the defect could have been readily cured. We do not say that it might not have been done at any time thereafter ; at any rate, before the the Jury retired to consult upon their verdict.

[5.] But the main question to be considered is, by what rule of law shall the rights of this and all other plaintiffs in

like cases, and the liability of this and all other rail road companies be determined ?

A great many requests to charge were made of the presiding Judge by each party, which were given, refused or modified according to his opinion of the law. And we avail ourselves of this occasion to suggest, that the practice of asking the Court to sub-divide a simple principle into innumerable parts, and to give separate instructions upon each, tends greatly to mar the symmetry of the law, as well as to mystify and embarrass the case. Here is a question, the whole law of which can be stated in a few lines, which is drawn out into a dozen or more parcels, covering as many closely written manuscript pages. Such a practice does harm every way ; and instead of giving aid and assistance to the Jury in their deliberations, it tends only to make "confusion worse confounded."

We take the doctrine to be this : that the proprietors of rail roads, when running their engines over crossings, are bound to exercise *reasonable* care and diligence, to prevent injury therefrom to travellers and other things on the road, crossed ; and that whether such care and diligence have been employed in a particular case, is a question of fact, to be decided by the Jury, upon all the circumstances. This rule commends itself, as well on account of its simplicity as the universality of its application, and it is the only one which can be prescribed by the Courts. They have tried in vain to be more definite and to classify the degrees of diligence ; but the attempt has been abandoned as impracticable.

It is true, that what will amount to reasonable care and diligence at a crossing, in a retired place and on a straight line in an open country, would be considered the grossest negligence in turning a curve, especially if at a crossing in the neighborhood of a church or other public place. To dash through the town of Griffin at the same speed that might be safely pursued a few miles distant, would exhibit a degree of recklessness from which even malice might be inferred, should human life be sacrificed. The rule of diligence

The Macon & W. R. R. Co. *vs.* Davis, adm'r, &c.

will vary, therefore, with the everchanging facts which accompany and surround each given case; the true test, always to be applied, being—did the defendants use reasonable diligence; that is, the care and diligence which, taking into consideration all the circumstances of the case, the exigency required and admitted of?

When, therefore, the Circuit Judge charged the Jury, that the company was bound to the "*utmost diligence;*" and, that to this end the conductors and engineers must hold their trains in check, so as to be able to stop them at *all* the crossings, to avoid collisions, we think he stated the rule too strictly. The doctrine of *extreme* diligence applies to the transportation of passengers; and such are the cases read by Col. Bailey; but it does not apply to this class of cases.

The casualty in which this action originated, occurred on the 14th day of December, 1851. The Legislature, being then in session, passed, forthwith, the following Act, the provisions of which our rail road companies would do well to take heed to. The first section declares—

"That the several rail road companies in this State shall be required, by the first day of February next, thereafter, to prepare and put up, in a substantial manner, sign-boards, parallel with the track, and over each and every public road, where the same crosses the rail road track, and sufficiently high to allow the passage under them of any vehicle commonly used upon said roads; and to have painted in large letters, on each side thereof, "Look out for the engine when the whistle blows."

The second section enacts: "That each of said companies shall cause to be fixed on the line of their track, and at the distance of two hundred yards from the centre of each public road, on each side of said road, a post; and the engineer shall be required, whenever he shall arrive at either of said posts, to blow the whistle of the engine until the engine arrives at the public road; and shall, moreover, be required to check the speed of said engine, so as to enable him to stop said engine should any person or thing be crossing said track,

on said public road." (*Pamphlet Acts of* 1851–'2, *p.* 108, 109.)

And should any company fail or neglect to put up the sign-boards and posts required by the first section of the Act, the president and directors thereof are each guilty of a misdemeanor; and upon indictment and conviction thereof, in the county where such failure occurs, shall each be subject to a fine of not less than five hundred, nor more than one thousand dollars; and upon failure of the engineer to comply with his duty, as prescribed by the Statute, he is liable to be punished by fine or imprisonment, or both, at the discretion of the Court; the company also being made liable for the payment of the fine. (*Ib.*)

Of course this law does not apply to the present case. It may be well to observe, however, that all the roads in this State will be bound to comply, at their peril, with the positive regulations prescribed by this Act; and failing to do so, they must take the consequences, both civilly and criminally. It may be further remarked, that on the other hand, even a compliance with these regulations will not exempt the companies from the obligation of using reasonable care and diligence in other respects, when the circumstances rendered it both practicable and right to use other precautions.

But it is insisted, that if the injury in this case resulted, in whole or in part, from the misconduct of the plaintiff's servant, that he cannot recover; and this seems to have been the rule laid down in *Butterfield vs. Forrester*, (11 *East.* 60,) and *Luxford vs. Large*, (5 *Car. & P.* 421, 24 *E. C. L. R.* 391.) But this doctrine has been modified in later cases; and in *Lynch vs. Nurdin*, (1 *Adol. & Ell. N. S.* 29, 41 *E. C. L. R.* 422,) it was held that the defendant was liable in an action on the case, though plaintiff was a trespasser, and contributed to the mischief by his own act. And this case has been followed in *Robinson vs. Cone*, (22 *Vermont R.* 213,) and *Birge vs. Gardiner*, (19 *Conn.* 507,) and numerous other adjudications in this country. We approve of this modification of the principle, and think that it ought to be

left to the Jury to say whether, notwithstanding the impru-
dence of the plaintiff's servant, the defendants could not, in
the exercise of reasonable diligence, have prevented the col-
lision. The place of crossing, its propinquity to the church,
the relative positions of the roads, the intervening obstruc-
tions, the time of the day, the weight and velocity of the en-
gine, the grade of the road—these and every other explana-
tory fact, should be referred to the Jury; and although it
may have been rash in the boy to attempt crossing ahead of
the train, but which he failed to do, probably on account of
the sudden terror of his team, still, if by reason of an ascend-
ing grade and other circumstances, it was in the power of
the engineer to have stopped the train, and prevented the
mischief, it will be competent for the Jury to make the com-
pany chargeable.