### 180. JOHNSON *v.* THE STATE.

1. Criminal statutes are to be strictly construed; and it can not be presumed, as against the defendant in a criminal case, that the legislature (in the absence of a formal expression of such purpose) intended to enlarge or extend the previously well-defined legal meaning of terms employed by that body in a new act, so as to make a new classification or cause the descriptive words to include an additional class of objects to that formerly understood by such terms.

2. If the criminality of an act depends upon the place where it is committed, the allegation of place is material; and variance between the allegation and the proof is fatal.

(*a*) Proof that a road was commonly and largely used by the general public for a number of years, without more, will not support an allegation that such was a "public" highway or a "public" road.

(*b*) The words "public highway" denote a generic term. The words "a public road," when used in an indictment based upon the act of 1905 (Acts 1905, p. 114), are descriptive of a species whose identity and characteristics are fixed by law, and are material; and the allegation must be sustained by proof.

3. The terms "public highway" and "public road" are not synonymous.

(a) The word "road" refers to the piece or strip of land taken; "way," in legal parlance, merely denotes an easement, and that the land has been subjected to servitude.

(b) "Highway" is also a generic term which includes other uses besides the right of ordinary locomotion over land which has been subjected to public use.

4. A road can be proved to be a public road, i. e., in use as a public highway, in four ways. A public road is created in four ways: (1) by a legislative enactment; (2) by action of the proper county authorities; (3) by dedication; (4) by prescription.

5. In the absence of proof of the establishment of a public road by legislative enactment, or by action of the proper county authorities, evidence of twenty years use and working by the proper authorities will create a public highway, generally called a public road, by prescription; and proof of seven years use, if accompanied by evidence of intention to give a way on the part of the owner, and like evidence of acceptance on the part of the public authorities, will establish a dedication.

6. Consequently where one is indicted for being intoxicated on a public highway, it is error to charge "If the evidence shows you  . .  that this road was used by the public for a number of years, or  . .  by a community of people for any number of years, as a matter of convenience or necessity,  . .  or for the regular use of travel, it would not be incumbent upon the State to show that it was a public road or private highway, established by law or the county authorities, and maintained as such."

7. It is, for the same reason, error to instruct the jury as follows: "I charge you that it is immaterial as to whether or not this road was maintained by the public or county authorities as a public highway or private way, but if you find that this road was used as a highway by a community of people for any number of years, as a means of ingress or egress to and from their homes, and that the crime was committed on said road by this defendant, it would be your duty to find him guilty."

Indictment for being intoxicated on highway, from city court of Douglas—Judge Roan.  December 17, 1906.

Submitted January 29,—Decided February 13, 1907.

*J. W. Quincey,* for plaintiff in error.

*M. D. Dickerson, solicitor, W. C. Lankford,* contra.

Russell, J.  The defendant in the court below was indicted for the offense of being intoxicated on a public highway. The wording of the act (Acts 1905, p. 114), so far as material in this case, is as follows: "It shall be unlawful for any person  . . to be and appear in an intoxicated condition on any public street or highway." Upon the trial the jury convicted the defendant. He asked for a new trial, which was refused, and he now excepts

to the judgment of the trial judge in overruling his motion, and assigns error thereon. In the amendment to his motion, approved by the court, the defendant complains that the court erred in the following charge: "It is one of the contentions of the defendant in this case that the road or highway upon which the alleged offense was committed is not such a public road or highway as is contemplated by the act. I charge you that if the evidence in this case shows to you to a moral and reasonable certainty, and beyond a reasonable doubt, that this road was used by the public for a number of years, or was used by a community of people for any number of years, as a matter of convenience or necessity, in going to and from market or church, or for the regular use of travel, it would not be incumbent upon the State to show that it was a public road or private highway, established by law or the county authorities, and maintained as such; but if you find that this road upon which the alleged crime was committed was used as before stated, then it would be your duty to find the defendant guilty, if you find in point of fact that he did commit the act charged in the bill of indictment. I charge you that it is immaterial as to whether or not this road was maintained by the public or county authorities as a public highway or private way, but if you find that this road was used as a highway by a community of people for any number of years, as a means of ingress or egress to and from their homes, and that the crime was committed on said road by this defendant, it would be your duty to find him guilty." The plaintiff in error assigns two errors on the foregoing charge: (1) that it authorized the verdict of guilty, when the evidence showed that the offense charged was not committed on a public highway, as contemplated by the act of the legislature making drunkenness on a public highway a violation of law; (2) that the charge intimated that a crime had actually been committed. The second ground of the exception was abandoned in the argument in this court. There is but one question, therefore, to be settled in this case; as the evidence would authorize the jury to have found that the defendant was intoxicated. And the purpose of our inquiry will be to ascertain what the legislature intended by the words "public highway," in the act, and what is the true meaning of the words "public road," in the indictment. If the place where the defendant was alleged to be intoxicated, as shown by the evi-

dence, is a public highway, then the verdict of the jury is right. If the evidence adduced and appearing in the record does not show the place where the acts of the defendant were committed to be a public road and public highway, then the charge of the trial judge was erroneous, and the verdict should be set aside. It is insisted by State's counsel that the lawmakers intended to protect all highways which are used by the public and which are in this sense public. And the question is asked, "If the legislature intended to make it a criminal offense for a person to be intoxicated on public roads established by law, why did the act not say such public roads as are statutory or established by law?" In the opinion of the members of this court, the peace and quiet of the citizen who lives on any road which is used for travel by the public is entitled to the same protection, by similar means, to that provided in this healthful statute for those who happen to live on public roads; and it is the prerogative of the legislature to so amend the act of 1905 as to make this the law; but it is not within the jurisdiction of this or any other court to legislate; and the fact that in the very creation of this court it is bound by the decisions of the Supreme Court, largely limits our power to construe. So while we think, for ourselves, that all roads are alike entitled to protection, it can not be presumed that the legislature did not know the meaning of the terms it chose to employ in its act. It is rather to be inferred, and is clear to our mind, that for some sufficient reason the legislative mind did not see proper to apply the operation of its act to roads which might cease to be used at the will of those who owned and controlled them, i. e. at the will of the owners of the fee.

Criminal statutes are to be strictly construed with a view to protecting every right of the citizen, and as against the defendant in a criminal case it can not be presumed that the legislature intended to enlarge and extend the previously well-defined meaning of terms employed by them to constitute a crime; more especially as the words "public street and highway" had been defined by the courts of this State and had a fixed and definite meaning. The term "public road" is not only distinguished from "private way," but it must mean a way not only *used* by the public, but maintained, repaired, and controlled by the proper authorities having in charge the public roads. Penalties are affixed for various viola-

tions of the road law, which would be unjust and inapplicable to roadways subject to be discontinued at the pleasure of other than the public authorities; and the safety of a citizen demands that these penalties provided for the public good shall not be enforced as to passways opened, used, and maintained only during the pleasure of private citizens. Furthermore, the burden of keeping up the public roads has to be borne by the great body of the citizens, so that we are bound to construe the words of the statute as well as the allegations of the indictment strictly.

That a variance between the allegations in an indictment which are material and the proof offered in support thereof is fatal is axiomatic. And "if the criminal character of the act depends upon the locality in which it is committed, the allegation of place becomes material, . . . furnishes an essential feature in the description of the offense, must be accurately laid, and matter of local description must be proved." If, therefore, the proof in this case (as we think) does not show that the place where the defendant appeared intoxicated was the same place or such a place as is alleged in the indictment, the variance will be fatal. In our judgment the place shown by the evidence is a piece of land owned and worked by private individuals over which the public is permitted, at the will of the owners, to pass and repass as may suit the convenience, necessity, or pleasure of the passer by, but which has never become either the public highway mentioned in the statute, or the public road used to describe it in the indictment. In our opinion the error in this case arose from confusing a road used by the public with a public road. There can be no doubt that the State proved that the locality where the defendant is alleged to have been intoxicated is a road, which simply means a piece of land either used or appropriated for travel. But the indictment alleged "a public road," and the statute penalizes drunkenness on the "public highway." Thus it became essentially material to be shown whether the road in question was a public road and public highway. We think there is a fatal variance between the proof and the allegations made, not because the location was not a road, but because it was not shown to be a *public* road, and because, on the contrary, the evidence established the fact that it was *not* a public road. So far as the general and continuous use by an entire community is concerned, the proof is sufficient, but mere use is

not enough to prove dedication or prescription, if either was relied upon.

The terms "public highway" and "public road" are not synonymous. We sometimes use the term "road" in ordinary conversation in the same sense as "way," but in legal parlance this is improper. "Road means any piece of land used or appropriated for travel." "Way . . means nearly the same thing as 'right of way;' or in other words, the right of one person, . . or of the community at large, to pass over the land of another." Choller-Potosi Mining Co. *v.* Kennedy, 93 Am. Dec. 416. The word used in the statute is "highway," which is defined by 1 Bouv. Law Dict. 750, to be "a passage, road, or street which every citizen has a right to use." But even this definition is not exhaustive; because the term may be applied more broadly. Abbott's Law Dictionary says, "There is a difference in the shade of meaning conveyed by two uses of the word. Sometimes it signifies right of free passage, in the abstract, not importing anything about the character or construction of the way. Thus a river is called a highway. . . Again, it has reference to some system of law authorizing the taking of a strip of land, and preparing and devoting it to the use of travellers; in this use, it imports a roadway upon the soil, constructed under the authority of these laws." We may say then, in brief, that the word "road" refers to the land; "highway" denotes the easement, and that the land taken has been subjected to servitude, "carrying with it the right to use the soil for the purposes of repair and improvement; and in cities, for the more general purposes of sewerage, the distribution of light and water, and the furtherance of public morality, health, trade and convenience." A highway may be a road, but a road is not necessarily a public highway. To be a *public* highway it must be, as stated in the indictment in this case, a *public* road.

It being settled, then, that the statute has reference to only such public roads as are public highways, we come to consider the nature of the proof required to show whether a given locality is within the descriptive term "a public road." A public road can be created in four ways: (1) by a legislative enactment; (2) by action of the proper county authorities; (3) by dedication, and (4) by prescription. No effort was made to prove the character of the road in this case, as coming under either of the first two

heads.   Was it proved to be a road by dedication?   The evidence
perhaps established fully that Oberry, the owner, had evidenced an
intention to donate the land to the public, but the evidence also
disclosed the fact that there had been no acceptance on the part
of the public.   There is no evidence that the public authorities
have ever worked the road as a public road.   Construing §3591
of the Civil Code, which is in these words, "If the owner of lands,
either expressly or by his acts, dedicates the same to public use,
and the same is so used for such a length of time that the public
accommodation or private rights might be materially affected by
an interruption of the enjoyment, he cannot afterwards appro-
priate it to private purposes," Justice Cobb says: "A dedication
to public use is  .  .  not complete until two things appear;
that is, an intention on the part of the owner to dedicate his prop-
erty to the public use, and an acceptance on the part of the public
of the property for such use. . . The intention to dedicate
need not be shown by an express declaration to that effect.   But
the use must be of such a character as to clearly indicate that the
public has accepted the dedication of the property to the public
use.   The acceptance need not be express, but if the way be used
by the public and worked, or treated by the public authorities as
a part of a system of public highways in the place where the way
is claimed, and this is continued 'for such a length of time that
the public accommodation and private rights might be materially
affected by the interruption of the enjoyment,' the dedication to
the public use is complete as against the owner of the fee." *Healey*
v. *Atlanta,* 125 *Ga.* 737, citing 53 *Ga.* 609; 44 *Ga.* 529; 118 *Ga.*
486; 120 *Ga.* 951.   And in the *Healey* case it is further said, that
unless it appears clearly that the "dedication was accepted by the
public authorities, either in express terms or by implication result-
ing from the maintenance of a way as public in its nature," the
use of one's property will not amount to a dedication.   In the
headnote it is said, that "in every case of an implied dedication it
must appear that the property has been in the exclusive control
of the public for a period long enough to raise the presumption
of a gift."   We assume this latter statement to be a succinct state-
ment as to the time necessary to create a road by dedication; and
it is also based upon sound reason.   For if there is an implied

dedication, it must rely upon the presumption. of a gift, which arises in seven years.

It being further true that the use by the public of Mr. Oberry's property is not necessarily inconsistent with the retention of dominion by him, we think that the State failed to show dedication as to the road in question. Nor will the evidence authorize the conclusion that the road had become a public road by prescription, because it nowhere appeared that the public had used and maintained it as a highway for a period of twenty years or more. In *Southern Railway Co.* v. *Combs,* 124 *Ga.* 1010, the court (while declining to determine the exact term of use by the public and working by public authorities necessary to make a road a public road by prescription) says, "It is certain that a road may become a public road when it has been used by the public and worked by the public authorities for twenty years." And we will add that twenty years' use, and work, maintenance, and control by the public road authorities, are required to fix title in the public as well as in the citizen, where possession adverse to the owner alone is relied upon.    In the recent case of *Kelsoe* v. *Oglethorpe,* 120 *Ga.* 951, the Supreme Court held that twenty years' adverse possession was necessary to work a non-user of a public road once established. So we think there is no question that evidence of twenty years' possession and use would be required were a prescriptive title relied upon instead of proof of dedication, or an order passed by the proper county authorities, or a legislative enactment. Many of the cases in which the question has been raised as to what constitutes a public road in Georgia have arisen under the Civil Code, §2222, which relates to railroad crossings over public roads. We have examined, perhaps, all of these cases, and it appears that up to and including the case of *Georgia R. Co.* v. *Cromer,* 106 *Ga.* 296, the view was entertained that the words "public road" were qualified by the words "established pursuant to law." And while it was not directly decided, an inference could have been drawn, from the earlier decisions, that the existence of a road as a public road must be shown by a public record, at least in so far as the terms were applicable to §2222. By later decisions, however, the rules we have laid down above have been recognized, and the classification of the four methods of proof we have adopted is authorized. And the

doctrine we have drawn from decisions of other States which hold that the road is the land, and the highway the servitude or use to which the land has been subjected, is sustained in our own State in *Kavanaugh* v. *Mobile & Girard R. Co.*, 78 *Ga.* 271, where the court held that the streets of Columbus belonged to the State, but as highways they belonged to the City of Columbus.

In view of what we have stated, the charge we have quoted in this opinion, and which was given by our learned brother of the trial bench in this case, was erroneous. And after reviewing a multitude of authorities in addition to those we have cited, we return to the words of the first headnote in *Hart* v. *Taylor*, 61 *Ga.* 156. "A neighborhood road used by a settlement of people, great or small, is not a public road in the sense of the Georgia Code, and in the common parlance of our people." Placing this in juxtaposition with the charge that "it is immaterial as to whether or not this road was maintained by the public or county authorities as a public highway or private way, but if you find that this road was used as a highway by a community of people for any number of years, as a means of ingress or egress to and from their homes, and that the crime was committed on said road by this defendant, it would be your duty to find him guilty," we are compelled to reverse the judgment of the court below. *Judgment reversed.*