## DUNAWAY *v.* WINDSOR.

706

No. 14866.   June 6, 1944.

*J. V. Poole,* for plaintiff.   *John H. Hudson,* for defendant.

GRICE, Justice.   Dunaway and Windsor are neighbors, each re--siding on a tract of land in what is inferentially shown to be outside the corporate limits of the City of Atlanta, in the county of Fulton.   Windsor's home is about 300 feet east of the home of Dunaway.   Gun Club road, shown to be a public road, is some distance west of both properties.   It was in evidence that originally one McWilliams owned the land between what is now Dunaway's property and the Gun Club road, and one Sizemore once owned the land on the other side of Dunaway.   On the hearing, Dunaway offered proofs sufficient to support the allegations of his petition; and unless the evidence as a whole, including that offered by Windsor, was sufficient to raise an issue, he, Dunaway, was entitled to a. finding and a decree in his favor enjoining Windsor from trespassing on Dunaway's premises, as prayed for.   It is insisted by Windsor that the jury were authorized to find that all he had done was. to remove impediments to travel placed by Dunaway in front of the latter's dwelling house, in a public road known as Mack Drive, leading from Gun Club road beyond the property of Dunaway to. that of Windsor; and that Dunaway was rightfully enjoined from.

continuing to prevent Windsor from using that part of Mack Drive which is in front of Dunaway's house. The real issue is, was the evidence such as to authorize the 'conclusion that the alleged acts of trespass were merely the removal of impediments from a portion of a public road? Under no other theory can the verdict of the jury finding in Windsor's favor be sustained. What is here relied on as a public road was not created by legislative enactment, nor was it established by a formal proceeding of the county authorities. It could have come into existence by only two other methods: either by dedication, or by prescription. *Southern Railway Co.* v. *Combs,* 124 *Ga.* 1004 (53 S. E. 508) ; *Hillside Cotton Mills* v. *Ellis,* 23 *Ga. App.* 45 (97 S. E. 459). Windsor's cross-action, while containing the allegation that the alleged road has been open and in constant and continuous use as a public highway for more than twenty years, goes further, for he says that it "has been dedicated and in use for more than twenty years." We shall, however, endeavor to determine whether under the facts it can be treated as having come into being either by dedication or by prescription. There is not even a hint in this record of any express dedication by any owner or former owner;—no deed, nor act, nor acknowledgment by him, nor any conduct of his expressing any intent to dedicate the land to the public as a highway. There may exist, however, an implied dedication : but whether express or implied, an intention on the part of the owner to dedicate his property to the public use must be shown. Although the dedication itself is not complete until there is an acceptance by the public of the property for such use, nevertheless there must be a dedication. When an implied dedication is claimed, the facts relied on must be such as to clearly indicate a purpose on the part of the owner to abandon his personal dominion over the property and to devote it to a definite public use. "The mere use of one's property by a small portion of the public, even for an extended period of time, will not amount to a dedication of the property to a public use, unless it appear clearly that there was an intention to dedicate, and that this dedication was accepted by the public authorities, either in express terms or by implication resulting from the maintenance of a way as public in its nature." *Healey* v. *Atlanta,* 125 *Ga.* 736 (54 S. E. 749). In the case last cited it was further said: "But the use must be of such a character as to clearly indicate that the public has accepted

the dedication of the property to the public use;" and also: "However, the acts relied on to establish the dedication must be such as to clearly indicate a purpose on the part of the owner to abandon his personal dominion over the property and to devote the same to a definite public use." In the early case of *Mayor &c. of Macon* v. *Franklin,* 12 *Ga.* 239, 244, this court had said that dedication may be made "in writing, or by parol; or it may be inferred from his acts, or implied, in certain cases, from long use." In *Collins* v. *Macon,* 69 *Ga.* 542, it was ruled that, "Intention to dedicate property to public use is essential to a dedication, but this may be proved by acts showing an assent that property should be so used and enjoyed. (a) The mere use of the corporate property of a city by it for a particular purpose, is not a dedication of such property for that purpose forever." In *Swift* v. *Lithonia,* 101 *Ga.* 706 (29 S. E. 12), may be found the statement that, "In order to constitute a dedication of land to public uses, an intention on the part of the owner to abandon the use of the land to the public must be shown by proof of unequivocal and unambiguous words or acts of such owner;—the circumstances must be such as to show a clear assent to such dedication." In 3 Dillon on Municipal Corporations (5th ed.), § 1079, the author states: "An intent on the part of the owner to dedicate is absolutely essential, and unless such intention can be found in the facts and circumstances of the particular case, no dedication exists. But the intention to which courts give heed is not an intention hidden in the mind of the land-owner, but an intention manifested by his acts. It is the intention which finds expression in conduct, and not that which is secreted in the heart of the owner, that the law regards. Dedications have been established in every conceivable way by which the intention of the party can be manifested. Where a plat is made and recorded and lots are sold with reference thereto, the requisite intention is generally indisputable. The intention may also be established by parol evidence of acts or declarations which show an assent on the part of the owner of the land that the land should be used for public purposes. To deprive the proprietor of his land, the intent to dedicate must clearly and satisfactorily appear."

Passing by for the moment a discussion as to whether there was such use by the county authorities as to imply an acceptance, the case as to dedication must fall, for the reason that, under the fore-

going authorities, no sufficient facts or circumstances were proved to show a purpose on the part of the owner to abandon his own personal dominion over the property, none to show a clear assent, nor any acts of the owner to show an intention to dedicate. But, it may be argued, an intention to dedicate may be inferred, as this court said in *Healey* v. *Atlanta,* supra, from an *acquiescence* by the owner in the use of his property by the public. Acquiescence, however, means a tacit consent to acts or conditions, and implies a knowledge of those things which are acquiesced in. One can not acquiesce in a wrong while ignorant that it has been committed, and the knowledge must be of facts. Pence *v.* Langdon, 99 U. S. 578 (25 L. ed. 420). In *Mayor &c. of Macon* v. *Franklin,* supra, Judge Nisbet said that a dedication of land to public use is in the nature of an estoppel *in pais,* and refered to it as being based on the assent of the owner. Generally, a person is not estopped by virtue of the existence of a fact of which he has no actual or constructive knowledge. *Sovereign Camp W. O. W.* v. *Heflin,* 188 *Ga.* 234 (3 S. E. 2d, 559). The evidence is that on July 25, 1927, Dunaway began actual occupancy of the premises under a bond for title, and that he has resided there ever since; that later the purchase-money was paid; and that on March 14, 1938, he received a deed thereto. His testimony negatives the idea of any acquiescence on his part in any use by the public as a road of a part of the premises occupied by him. Mrs. C. F. Boynton, his predecessor in title, was sworn as a witness, and there is nothing in her testimony on which such an acquiescence could be based. She testified as to "a little one-way road going out to Mr. Dunaway's house, but so far as knowing how far it came over, I would not know;" that when she went out that way to get to the Windsors', "we passed this little path, Mr. Dunaway's yard. . . I would not term it a road; but there has been a path." On this branch of the case, we conclude that there was no dedication shown, either express or implied, and nothing to justify the finding that the owner had ever acquiesced in any use by the public.

In view of the absence of any proof of dedication, or of any act by the owner, or condition which would imply it, either by acquiescence or otherwise, we need not measure the testimony to ascertain whether it is sufficient to show acceptance. As to that, however, in *Healey* v. *Atlanta,* supra, it was ruled: "In every case of an

implied dedication it must appear that the property has been in the exclusive control of the public for a period long enough to raise the presumption of a gift." The mere fact that the public uses the property of a private individual is not necessarily inconsistent with the retention of dominion by the owner." See also, *Ellis* v. *Hazlehurst, 138 Ga.* 181 (75 S. E. 99), and the distinction there drawn between acts of user when solely relied on to raise an implication of dedication, and as evidencing an acceptance of an express dedication. The burden was on the defendant to show this, and he failed to do so.

Nor did he successfully carry the burden of showing that the premises here involved had become part of a public road by prescription. In *Southern Railway Co.* v. *Combs,* 124 *Ga.* 1004, 1012 (53 S. E. 508), it was said that when for a period of twenty years the public have been accustomed to travel a road, and the authorities of a county having charge of the working and repairing of roads work the same, and keep it in repair, the road becomes a public road so far as the rights of the public are concerned; and that if the road be actually laid out, and it be worked by the county authorities, and used by the public for a period of twenty years, the road becomes a public road by virtue of public use and public work in maintaining it for the period referred to. In *McCoy* v. *Central of Georgia Ry. Co.,* 131 *Ga.* 378 (62 S. E. 297), it was said: "If 20 years user, with the requisite characteristics, as a public highway, raises a presumption of grant or dedication against the owner, yet, to complete the status as a public road within the meaning of our laws, there must be action on the part of the county authorities having power over public roads, of the character above indicated. We do not think, however, that it is necessary that the county authorities should have done such acts continuously for 20 years, in addition to 20 years adverse user, as of right, by the traveling public, of the road as a highway;" i. e., of such a character and extent as to show that "the public authorities have accepted it directly, or exercised dominion over it, or asserted a claim to it in such manner and to such an extent as to show acceptance by them;" and "as to clearly indicate such acceptance." In *Louisville & Nashville R. Co.* v. *Hames,* 135 *Ga.* 67 (68 S. E. 805), it was ruled that: "A road may become a public road by prescription. Evidence that the public has used the road continuously for 20 years, and

that the proper county authorities during that time have recognized it as a public road by having the same worked, will be sufficient to authorize an inference that such road is a public road. In determining whether a road used by the public for the period of 20 years has been accepted by the authorities of the county, evidence that a public-road overseer had caused it to be worked, and that, after complaint of a citizen to the ordinary of the county to take charge of the road, it had been worked by the road hands, is relevant and admissible." In *Shirley* v. *Morgan,* 170 *Ga.* 324 (152 S. E. 831), it was said: " 'Where there is no intention to dedicate, but the public has taken possession of the property of an individual, and used and maintained it as a highway for a period of twenty years or more, a highway by prescription becomes complete.' *Healey* v. *Atlanta,* 125 *Ga.* 736 (54 S. E. 749). In this case the evidence did not authorize a finding that the possession and maintenance had continued for a period of twenty years." In *Johnson* v. *State,* 1 *Ga. App.* 195 (58 S. E. 265), may be found the definite statement that twenty years use, and work, maintenance, and control by the public road authorities are required to fix title in the public as well as in the citizen, where possession adverse to the owner alone is relied on. In *Davis* v. *State,* 9 *Ga. App.* 430 (71 S. E. 603), the view was expressed that, by analogy to our Code provision relating to the acquisition of prescriptive title to land, the rule would seem to be that it takes twenty years of continuous use and occupancy of a public road as a highway in order to extinguish the title of the landowner and to perfect the title in the public, in cases where the use and occupancy have not been under color of title. What was said in *McCoy* v. *Central of Georgia Ry. Co.,* supra, as to the non-necessity of showing that the county authorities should have performed acts of dominion continuously for twenty years, in addition to twenty years of adverse use by the public, was by way of obiter, since in that case it appeared that the road was not and never had been a public road, and that the county authorities had never taken charge of or worked it. The correct rule on that subject, as we view it, was expressed by Judge Russell in *Johnson* v. *State,* supra, and by Judge Powell in *Davis* v. *State,* supra, and accords with what was said by Mr. Justice Cobb, in *Southern Railway Co.* v. *Combs,* supra, to wit, that, "A public road can come into existence by public use and public work, and when such use

and work are continuous for twenty years it is certainly a public road so far as the right of the people to use the same as a highway is concerned;" and with what was also said by him in *Healey* v. *Atlanta*, 125 *Ga.* 738 (supra), to wit: "Where there is no intention to dedicate, but the public has taken possession of the property of an individual, and used and maintained it as a highway for a period of twenty years or more, a highway by prescription becomes complete. When there is an intention to dedicate, the maintenance of a way for a less time will bring into existence a completed highway by dedication. See, in this connection, *So. Ry. Co.* v. *Combs,* 124 *Ga.* 1004; *Mayor of Sandersville* v. *Hurst,* 111 *Ga.* 453."

In *Savannah, Fla. & Western Ry. Co.* v. *Gill,* 118 *Ga.* 738 (45 S. E. 623), Mr. Presiding Justice Fish discussed the question as to how long it took to cause a road to become a public road by prescription, but he did not find it necessary to pass upon whether the use by the public for a less time than twenty years would suffice. However, as a result of his investigation of the outside authorities, he made this observation: "In reference to the length of time in which a road must be used by the public as a highway in order to establish a prescriptive right to it as such, most of the courts hold that it must be used for a period of time conforming to that necessary to establish title to real estate by prescription. Some courts, however, hold that the open, uninterrupted, and continuous use of a road by the public for a much less period of time will raise a presumption in favor of the establishment of the road as a public highway. In some of the States the time necessary to establish the road by prescription has been fixed by statute. In this State, actual adverse possession of lands by itself, for twenty years, will give good title by prescription against every one except the State, or persons laboring under the disabilities specified by the law. There was ample evidence to support a finding by the jury that the road in question had been openly, uninterruptedly, and continuously used by the public, as a public road, for more than twenty years, before the defendant company obstructed it; and this was sufficient to establish a prescriptive right in the public to its free and unobstructed use as a public highway." In *Swift* v. *Mayor &c. of Lithonia,* supra, the opinion carries an extract from Dillon on Municipal Corporations, in which, in discussing the necessity for the intent of the owner to dedicate to appear, when dedication is relied

on, it was said: "But where there is no other evidence against the owner to support dedication but the mere fact of such user, so that the right claimed by the public is purely prescriptive, it is essential, to maintain it, that the user or enjoyment should be adverse, that is, with a claim of right, and uninterrupted and exclusive for the requisite length of time." In 1 Elliott on Roads and Streets (4th ed.), § 191, the author discusses the distinction between prescription and dedication, and says that "dedication implies a conveyance and an acceptance, while prescription requires an unbroken possession or user under a claim of right." In section 194 of the same volume, the author adds: "As a general rule, before a highway can be established by prescription, it must appear that the general public, under a claim of right, and not by mere permission of the owner, used some defined way without interruption or substantial change, for a period of twenty years or more. . . The use must not only be adverse, but it must be continuous and uninterrupted, although it is not every slight or occasional use of the land by the owner that will constitute an interruption of the public use."

Formerly, one Cary owned much of the acreage in this immediate territory, lived thereon, and used a narrow strip as a lane from his cow pasture, which lay beyond the lot afterwards acquired by Dunaway. When McWilliams purchased six and a half acres of the property lying west of the Dunaway lot and reaching to the Gun Club road, he sold off lots to several persons who built dwellings thereon, and a private road was opened from the Gun Club road to what was afterwards the Dunaway property. This afterwards became known, according to the testimony offered in behalf of Dunaway, as Mack Drive, stopping at Dunaway's property. According to the testimony of Windsor, this road, and therefore Mack Drive, did not stop there, but went directly in front of and across what Dunaway claims to be his front yard. Dunaway testified that he bought his place on July 25, 1927, and has lived there ever since, and that at that time there was no road crossing his yard. Other witnesses, to wit, McConnell, McWillians, Mrs. Dunaway, McDaniel, Mrs. Sizemore, Kirbo, and Prince, testified to the same effect. The evidence in behalf of the defendant is not sufficient to show that a public road was established by prescription over that portion of land lying immediately in front of the Dunaway dwelling. Measured by the principles announced in the foregoing au-

thorities, the testimony fails to show a prescriptive title. That various persons had from time to time passed over ·Dunaway's yard in trucks, and perhaps other vehicles, was shown; but resolving every conflict in the evidence in favor of the prevailing party, and giving effect to all the reasonable deductions therefrom, there was no continuous, uninterrupted, and adverse use by the public, nor a continued maintenance of the so-called roadway by the public authorities for the required length of time, such .as would be sufficient to submerge the owner's title into a prescriptive right on the part of· the public.

The motion for new trial contains certain special grounds relating to the judge's charge, but these need not be considered. Error is also assigned on the amended decree. But since the decree must fall when the verdict is set aside, that alleged error need not be passed upon. The judge erred in refusing to grant a new trial, because of a want of evidence to support the verdict.

*Judgment reversed. All the Justices concur.*