# McCOY v. CENTRAL OF GEORGIA RAILWAY COMPANY.

1. The plaintiff brought suit for the recovery of damages alleged to have been sustained as a result of personal injuries caused by the negligent failure of the defendant's employees to observe the requirements of the blow-post law embodied in the Civil Code, § 2222. The recital of the facts upon which the cause of action was based showing that the right to recover against the defendant was dependent upon the question whether the road crossing at or near which the injuries were alleged to have been sustained was a public crossing, when the evidence showed unquestionably that the crossing was not a public crossing as alleged, the verdict in favor of the defendant was demanded by the evidence.

2. That being true, a mere inaccuracy in the charge will not work a reversal of the judgment denying a new trial.

Argued January 13,—Decided August 19, 1908.

Action for damages. Before Judge Seabrook. Effingham superior court. July 13, 1907.

Martha McCoy brought suit to recover damages alleged to have been sustained by reason of the negligence of the railway company. She alleged, that while going from the eastern side (the side of her residence) to the western side of the track of the defendant, "it became necessary that plaintiff-should travel upon the Middle Ground public road, and thence by another public road, and across the point where said railroad intersects with and crosses the public road;" that she was traveling in a wagon drawn by a kind and gentle horse; that at the moment when petitioner, on said public road, was crossing the track of the defendant, the northbound passenger-train, without any notice or warning whatever of its approach, passed over said crossing at the instant when plaintiff's horse and wagon had cleared the western side of the track, and because of the sudden appearance and the terrific speed and noise produced by the passage of said train, and the proximity of her vehicle thereto, her horse became terrified and dashed into the woods, hurling her against the logs and stumps, bruising and rendering her unconscious, and causing her by such contact to lose almost her entire left ear; and that she was permanently injured, crippled, disfigured, and maimed. The specific acts of negligence complained of are as follows: that the engineer failed to blow the whistle of the locomotive until it arrived at the public road, and did not simultaneously check and keep checking the speed thereof so as to stop should any person or thing be crossing the track;

that the agents in charge of the train wholly failed to give any warning whatever of its approach; and that the defendant and its agents so operating the train failed to slacken the speed of the same before reaching said crossing, and after the time when they did see, or could in the exercise of reasonable care and diligence have seen, that the plaintiff was in a dangerous position. By amendment she alleged that the dirt road over which she was traveling at the time she received said injuries had been used continuously by the public for twenty years or more, and was the only road at or near her residence, whereon she could travel from her home, across the track to the western side thereof.

It appears from the evidence as adduced at the trial that there was a sharp curve in the railroad track just south of where the accident occurred, and that the land outside of the right of way had grown up in woods and trees, making it difficult for a person to see a train until it came around the curve. Witnesses testified that the road in question had been used by the public for a number of years, some saying over twenty years; but none testified that it had ever been worked by the county authorities as a public road; and it was shown without conflict that they had not recognized it as such, or worked or maintained it, and that it was not a public road. A verdict was rendered in favor of the defendant. The plaintiff made a motion for a new trial, which was overruled, and she excepted.

*D. H. Clark* and *James K. Hines*, for plaintiff.

*Lawton & Cunningham* and *H. W. Johnson*, for defendant.

BECK, J. (After stating the facts.) The plaintiff's cause of action, as declared on in this case, was for damages resulting from personal injuries alleged to have been sustained in consequence of the failure upon the part of the agents and employees of the defendant company to observe the requirements of the statute, making it the duty of the engineer to blow the whistle of the locomotive and to check the speed of the train as required under the provision of §2222 of the Civil Code. While there was a general allegation, in specifying the acts of negligence of which the defendant was guilty, that the agents of the defendant, operating the train, failed to slacken the speed of the same before reaching the crossing, and after the time when they saw or in the exercise of ordinary care could have seen that plaintiff was in a perilous

position,—this must be considered in connection with that part
of the petition which precedes, and which was intended by the
pleader as a statement of the facts of the case. The specification
of the acts of negligence must have some relation to the previous
recital of the facts and circumstances attending the plaintiff at the
time of the injury; and these, taken together, show clearly that
the suit was brought for damages arising out of the failure of the
railway company to comply with the requirements of the law in re-
gard to public crossings, under the section just cited. This being
true, the court did not err in instructing the jury that the plaintiff
would not be entitled to recover in this action, unless it appeared
from the evidence that the road upon which the plaintiff was
traveling at the time of her injury was a public road in the mean-
ing of the law. In the same connection, after thus making the
plaintiff's right to a recovery depend on the question as to whether
or not the crossing at or near which the occurrence took place,
resulting in injury to the plaintiff, was a public road, the court
defined a public road as one "which had been laid out and desig-
nated by the proper county authorities as a public road or worked
by the public as such." Error is assigned upon that portion of the
charge containing the definition quoted above; and we have to
consider whether or not the the charge was erroneous for the rea-
son assigned, and whether, if erroneous, the error was hurtful to
the plaintiff. The question as to whether a public road might
come into existence by prescription has been before this court
several times; and in the case of *Southern Ry. Co.* v. *Combs,*
124 *Ga.* 1004 (53 S. E. 508), it was held, that, within the mean-
ing of the law requiring certain precautionary acts to be done by
railroad companies and their engineers at points where railroads
crossed public roads—commonly called the blow-post law—the
term "public road or highway" was not confined to one which had
been laid out and established by the county authorities by regular
proceedings, but included highways in any one of four ways:   (1)
by legislative act; (2) by formal proceedings by the county au-
thorities establishing it; (3) by dedication; (4) by prescription.
Evidence was admitted in that case to show that the road which
was crossed by the railroad at the point involved was at that time
and had been for many years (according to some of the witnesses,
upward of 30 years) in use by the public as a road for wagons,

etc., and had been worked during that time by the county authorities as a public road. To this objection was made on the ground that such use and work would not make a public road in the meaning of the road law. What was said in the opinion must be read in the light of the case before the court and of the questions involved. It was said that continuous user for 20 years and work by the county authorities during that period showed a public road; but this was not held to be an exclusive rule as to evidence admissible to show a prescriptive highway. That certain evidence was sufficient to show prescription or authorize the jury to find it does not imply that nothing else may suffice. Indeed, in the opinion of Mr. Justice Cobb in the *Combs* case, he said: "It is certain that a road may become a public road when it has been used by the public and worked by the public authorities for 20 years, and it is unnecessary now to determine whether a use by the public and a working by the public authorities for a less period would make a road a public road." We do not think that the decision in that case should be construed as ruling that under no circumstances could a road be proved to be a public road without proof of actual work by the county authorities thereon. It is possible, for instance, that a road might be used by the public and claimed and controlled by public authorities, and clear and undoubted acts of dominion over it might be exercised, and yet the road might not need and might not have work done for its maintenance. The language of the *Combs* case was doubtless in the mind of the presiding judge when he used the expression "or worked by the public as such." These words were too restrictive, as negativing any other possible mode of proving a recognition, control, or assertion of claim of dominion on the part of the county authorities. This is not a controversy with a landowner as to the acquisition of a right of way, public or private, over his land, nor as to whether public accommodation or private rights have intervened so as to prevent the withdrawal of a dedication (Civil Code, §3591). It is a question of whether there was a failure on the part of the railroad company to discharge a duty imposed by statute in regard to a place where its track crosses a public road or highway, and whether this was a public road crossing in the sense of that statute. Civil Code, §2222, et seq. The law requiring the erection of "blow-posts," the sounding of the whistle of the locomotive, and

the checking of the speed of the train, applies to public road cross-
ings only, not to those of private ways. *Georgia R. Co.* v. *Cox,*
61 *Ga.* 455; *Georgia R. Co.* v. *Partee,* 107 *Ga.* 789 (33 S. E.
668) ; *Hart* v. *Taylor,* 61 *Ga.* 156.

The plaintiff relied on showing the existence of a public road
or highway by user or prescription. Two theories have been ad-
vanced as the basis for the acquirement of a highway by prescrip-
tion : one, that, after use for the necessary time and of the neces-
sary character, it would be presumed that there had been an
antecedent grant or dedication; the other, that the presumption
which arises is that at some anterior period the road was estab-
lished by competent authority. Indeed, there are two views as to
prescription generally based on adverse possession alone for the
necessary time, the one presuming a grant, the other interposing
a bar from lapse of time. The theory of the presumption of a
grant is that adopted in this State. *Mitchell* v. *Rome,* 49 *Ga.* 19
(15 Am. R. 669). And the doctrine of a presumption of a dedi-
cation has been applied to the acquisition of a street. *Swift* v.
*Lithonia,* 101 *Ga.* 706 (29 S. E. 12) ; *Georgia R. Co.* v. *Atlanta,*
118 *Ga.* 486 (45 S. E. 256) ; 2 Dill. Mun. Corp. (4th ed.) §637
et seq. The other theory would apparently operate against minors
as well as persons sui juris, since condemnation can be had and a
road established against a minor as well as an adult. See Elliott
on Roads and Streets (2d ed.), §§170, 171; Wash. Eas. (4th ed.)
191 (*118), 197 (*125), et seq. In view of our statutes as to
public roads and the powers of the county authorities in regard
thereto, we are of the opinion that mere user by the traveling
public for 20 years, though adverse, does not suffice to impress upon
the road the character of being a public one, unless the public au-
thorities have accepted it directly, or exercised dominion over it,
or asserted a claim to it in such manner and to such an extent
as to show an acceptance by them. And, as such acceptance
would impose on the county authorities duties and responsibili-
ties connected with a public road, these acts should be such in char-
acter and extent as to clearly indicate such acceptance. Work
and maintenance as a public road is the most usual evidence of
recognition and assertion of dominion by the county authorities;
but it is not exclusive. If 20 years user, with the requisite char-
acteristics, as a public highway, raises a presumption of grant or

dedication against the owner, yet, to complete the status as a public road within the meaning of our laws, there must be action on the part of the county authorities having power over public roads, of the character above indicated. We do not think, however, that it is necessary that the county authorities should have done such acts continuously for 20 years, in addition to 20 years adverse user, as of right, by the traveling public, of the road as a highway. It is enough if, in addition to such user, for that time, there should have been acts of the county authorities of the character and to the extent above stated. In the case of *Branan* v. *May,* 17 *Ga.* 136, the question arose on the admissibility of parol evidence of the use of a road as a public highway, the objection being that there was higher evidence, namely, the order of the inferior court. It was held competent to introduce parol evidence to show a prescriptive highway. In the case of *State ex rel. Habersham* v. *Savannah Canal Co.,* 26 *Ga.* 665, the proceeding was by mandamus in the name of the State, on the relation of certain parties, thus sounding as a public proceeding. In *Green* v. *Bethea,* 30 *Ga.* 896, the county commissioners were asserting a claim to remove gates from an alleged highway. The question of recognition by the authorities was not apparently contested or discussed. In *Savannah Ry. Co.* v. *Gill,* 118 *Ga.* 737 (45 S. E. 623), it appeared that the county authorities had attempted to establish the road, and the order was admitted to show assertion or claim of an opening of a public road, and that the user was thereunder.

We are aware of decisions of courts and statements of text-writers which declare that user alone by public passage will create a conclusive presumption of both dedication and acceptance, or of the creation of a road, so as to impose upon the public authorities the duty of working and repairing it. But the duties and powers of the county authorities in this State, in establishing, altering, or abolishing public roads, are quite broad, and may not coincide with the powers of the officials in the jurisdictions where these rulings have been made, or at least in some of them. At any rate, under our laws as to public roads, we are not prepared to hold that the county authorities may have a public road or highway forced upon them by mere user without their knowledge or assent, or even against their will, or after refusal to open it, upon application, as provided by law, and that indictment may be found against

the road commissioners for not keeping in repair a road so established against the will or without the acceptance of the county authorities. It has been said that the county authorities are but the agents of the public, who are the real principals. But while this may be so in a sense, yet where our statute gives discretionary power to the authorities, we think they have the right to exercise it, and that the road commissioners, or overseer, can not be made indictable for a failure of duty in reference to a road by mere user, against the judgment or will of the authorities as to the creation of the road. If any other construction than that herein indicated were placed upon the law touching public-road crossings, this anomalous situation might result: The superintendent of the railroad and the engineer might be indicted for failing to comply with the statutory provisions touching such crossings (Penal Code, §§517, 518). At the same term of court, the road commissioners, or overseer, might be indicted for failure to perform their duty in regard to the same road. Political Code, §532; Acts 1896, p. 80; Acts 1903, p. 103. The railroad superintendent and engineer might be convicted upon proof of user alone, because the road was a public one; while the road commissioners, or overseer, might be acquitted, in spite of the user, because the county authorities had never accepted the road, and perhaps had declined to do so, and because the road was not a public one. Sections 516-519 of the Political Code do not control the case, especially as they are only operative on recommendation of the grand jury. Since the repeal of the statute of limitations as to suits for the recovery of land, leaving prescription to control instead, a presumption of dedication or grant does not follow the old limitation period by analogy (*Williams* v. *Turner*, 7 *Ga.* 348, 353), but the analogy is now to the period of prescription as to lands or easements, unless fixed by statute.

In the case at bar the evidence for the plaintiff tended to show user of the road by the public for more than 20 years, she adding in general terms "as a public road." The evidence introduced by her, however, showed that the public authorities had never worked the road; and one of the witnesses for her testified that "this dirt road is nothing but a neighborhood road, and has never been worked by the public authorities." The defendant showed that the road was not, and had never been, a public road; that there

was no order on the records of the county commissioners (extending back to 1871, when the board was established) designating it as a public road; that "the county authorities have never taken charge of this road, nor worked it;" and that it was a mere neighborhood road leading across the railroad at a turpentine still. Thus, taken together, the evidence showed clearly that the road was not a public one, or the crossing a public crossing within the meaning of the statute commonly called "the blow-post law." This being so, and the case depending on that point, there could be no recovery; and the inaccuracy in the charge mentioned will not require a new trial.

It is argued that, even if this is not a public road, there is evidence of negligence; but the petition is predicated on the allegation that the plaintiff was at a public crossing. She was not injured by being struck, but by reason of her horse being frightened by the noise of the train. There were no allegations of unusual and unnecessary noises, nor other averments sufficient to authorize a recovery on any basis except that of a public-road crossing and the failure to comply with the law on that subject.

*Judgment affirmed. All the Justices concur.*