26707. ATLANTA & WEST POINT RAILROAD CO. *v.* WISE.

DECIDED APRIL 26, 1938. REHEARING DENIED JULY 13, 1938.

*Heyman & Heyman, Stanford Arnold,* for plaintiff in error.
*S. H. Dyer, Ellis G. Arnall, A. H. Freeman,* contra.

GUERRY, J. This is a suit by Luna Mae Wise against the Atlanta & West Point Railroad Company, for damages because of the homicide of her husband at a railroad crossing. The main point insisted on by counsel revolves around the question as to whether the crossing was a private crossing or was a public crossing, and the consequent duty owed to the deceased by the defendant because of the blow-post statute. The petition alleged that plaintiff's husband was killed by defendant's train at what is known as Hallman's Crossing, which crossing "is part of a road that crosses the tracks of said defendant, and the said road and crossing is and has been used and traveled by the public for more than forty years. The said road connects the Newnan and Atlanta road, now State Highway Route 41, with the Palmetto and Senoia road, and is a road on which many people live. The said road has been worked and kept in repair for travel by the public and has been used and traveled by the public. The public has walked on said road, rode in buggies, wagons, and in motor vehicles over the same. The said road has been worked by the County of Coweta, the county in which the said Hallman's Crossing is located, and also been worked under the supervision of Coweta County road supervisors. The said road and crossing has been used by the public for said forty years without the disapproval of said defendant; and petitioner avers by reason of the facts aforesaid that the said road was and is a public road of said county." The demurrers to the petition were overruled, and the trial resulted in a verdict for the plaintiff. The defendant excepted to the overruling of the demurrers and its motion for new trial.

"The question as to whether a public road might come into existence by prescription has been before this court several times; and in the case of *Southern Ry. Co. v. Combs,* 124 *Ga.* 1004 (53 S. E. 508), it was held, that, within the meaning of the law requiring certain precautionary acts to be done by railroad companies and their engineers at points where railroads crossed public roads—commonly called the blow-post law,—the term 'public road or highway' was not confined to one which had been laid out and established by the county authorities by regular proceedings, but included highways in any one of four ways: (1) by legislative act; (2) by formal proceedings by the county authorities establishing it; (3) by dedication; (4) by prescription." *McCoy* v. *Central*

*of Georgia Ry. Co.,* 131 *Ga.* 378, 380 (62 S. E. 297). It is true that the petition alleges that the road was a public road; but this conclusion is drawn from the pleaded facts, and on demurrer we may consider whether these facts constitute the road a public road or a private way, and whether they are sufficient to show that the conclusion drawn from them is correct. Judge Cobb, in *Southern Ry. Co.* v. *Combs,* supra, presented a thorough discussion of the matter. Roads which are established "pursuant to law" are not exhaustive of roads to which the blow-post statute may be applicable. Although a road might not be established pursuant to law, as is meant by the formal dedication by the public authorities, it still might become a public road by public use for a specified time and being worked and kept in repair by the county authorities. "It is certain that a road may become a public road when it has been used by the public and worked by the public authorities for twenty years." *Southern Ry. Co.* v. *Combs,* supra. Judge Beck in the *McCoy* case cited above, said, in discussing the *Combs* case: "We do not think that the decision in that case should be construed as ruling that under no circumstances could a road be proved to be a public road without proof of actual work by the county authorities thereon. It is possible, for instance, that a road might be used by the public and claimed and controlled by public authorities, and clear and undoubted acts of dominion over it might be exercised, and yet the road might not need and might not have work done for its maintenance. The language of the *Combs* case was doubtless in the mind of the presiding judge when he used the expression 'or worked by the public as such.' These words were too restrictive, as negativing any other possible mode of proving a recognition, control, or assertion of claim of dominion on the part of the county authorities." Judge Beck further said: "We are of the opinion that mere user by the traveling public for twenty years, though adverse, does not suffice to impress upon the road the character of being a public one, unless the public authorities have accepted it directly, or exercised dominion over it, or asserted a claim to it in such manner and to such an extent as to show an acceptance by them. And, as such acceptance would impose on the county authorities duties and responsibilities connected with a public road, these acts should be such in character and extent as to clearly indicate such acceptance. Work and mainte-

nance as a public road is the most usual evidence of recognition and assertion of dominion by the county authorities; but it is not exclusive. If twenty years user, with the requisite characteristics, as a public highway, raises a presumption of grant or dedication against the owner, yet, to complete the statute as a public road within the meaning of our laws, there must be action on the part of the county authorities having power over public roads, of the character above indicated. We do not think, however, that it is necessary that the county authorities should have done such acts continuously for twenty years, in addition to twenty years adverse user, as of right, by the traveling public, of the road as a highway." See also *Hillside Cotton Mills* v. *Ellis,* 23 *Ga. App.* 45 (97 S. E. 459).

We think the allegations as to the use of the road by the public, and its work by the authorities of Coweta County, are sufficient to show its character as a public road, as against demurrer. If the crossing where the injury occurred was a public crossing, then the petition set forth a cause of action, and the demurrer was properly overruled. The petition in paragraph 6 alleged that the crossing "is a public crossing," and then alleged the duty of the defendant to erect blow-posts, and its failure so to do. The demurrer to this paragraph was properly overruled. The allegation that the engineer in charge of the train was negligent in that he failed to keep a constant and vigilant lookout along the track ahead of his engine at the time and place the plaintiff's husband was killed, and while said engine was approaching the crossing on which the injury occurred, and that he failed to blow his whistle to warn plaintiff's husband of his danger, is not subject to a demurrer that it is vague, uncertain, and indefinite or that it states a mere conclusion of the pleader. If this crossing was a public crossing as alleged, the engineer was under a duty placed on him by law to blow his whistle on approaching it. If it was only a private crossing, ordinary care might require that the defendant be on the lookout in approaching it, and have his train under control to avoid doing an injury to a person who might be on it. *Louisville & Nashville R. Co.* v. *Arp,* 136 *Ga.* 489 (2) (71 S. E. 867). A careful consideration of the allegations of the petition shows that it is not predicated on the theory of this crossing being a private crossing. The special demurrers were properly overruled.

The evidence, including the photographs introduced, shows that a paved road is west of the railroad; that the crossing is from this paved road east across the railroad; that this road then immediately turns south along the railroad right of way for a distance of fifteen to eighteen hundred feet, and thence runs east to Hill Drew's house, about a half mile from the crossing; and that there is a public crossing known as "Rock Cut Crossing," or "Eberhardt Crossing," about half a mile to the south, and another known as "Hayden's Crossing," some distance to the north of the crossing known as "Hallman's crossing," where plaintiff's husband was killed. Witnesses for the plaintiff testified that when "Hallman's crossing" was originally established about thirty-five or forty years ago, it "originally merely enabled anybody who wanted to go down in that bottom to get in there. There is a bottom about half a mile down off the railroad." Another witness for the plaintiff testified: "The road that went over that crossing thirty-five or forty years ago went over and crossed the bridge and across the bottoms there and went out into the other road. . . There was a road over there thirty-five years ago, that goes into a field. The road went out into another road, the Senoia road. It was just a field road then, just an ordinary field road to get to a man's property. Whether there is such a road there now, that goes straight over the railroad and keeps on through a field at right angles to the railroad and goes over to the Senoia highway, I don't know." We may say that the photographs show but one road, a road which parallels the railroad on the east after it crosses the railroad. This road which parallels the railroad after it crosses at Hallman's crossing was started only twelve or fourteen years ago, after a sawmill had been put near there. A witness for the plaintiff testified: "That is how that road got started twelve or fourteen years ago. Up to that time there had been no road which ran parallel with the railroad." Another witness testified that such road had only been there twelve or fourteen years. Three or four years before the accident a convict guard, one Millirons, in charge of the road scrape, and some convicts of Coweta County, had used the scrape on this road which paralleled the railroad and then turned to the west for about half a mile as far as the home of Hill Drew. This convict guard testified that he worked this road as far as Hill Drew's house, three or four years ago, at the direction of a com-

missioner of Coweta County, who is now dead. He further swore: "I will say it was a private road for the man who lived there. In course of my work around the county I have worked other private driveways, lots of them." The defendant showed by the road superintendent of Coweta County, who had had charge of the roads for twenty-five years, that "we worked the road to Mr. Drew's house because we were asked to." It further appears that the road was worked only this one time. The remainder of this road beyond Hill Drew's house has never been worked by the county authorities. It was also shown that the road superintendent of Coweta County, in pointing out to the officials of the defendant the crossings to be marked as required by law, did not point out this crossing, because "I didn't consider it a public crossing." It was shown without dispute that such crossing and road were not recorded on the records of the commissioners of the county. The defendant introduced witnesses who had worked the lands across the railroad at that point, and they testified that the crossing was established "to enable people to go from one side of the railroad to some bottoms on the other side," and that that road leading to the bottoms had never been worked by the county authorities. "It was just a farm road to help get in to that place."

Will the facts stated above support a finding that this crossing was a public crossing? The crossing itself has been there at least thirty-five years. It was originally established and used to afford ingress and egress to those farming the land in the bottoms to the west of the railroad. It was a "farm road" or a "field road." It does not appear that the road as originally used, which called the crossing into existence, is now being maintained, or that such road ever acquired the character of a public road. Twenty years use by the public is insufficient, alone, to establish the character of the road as a public road, unless some act is shown to have been done by the proper county authorities, indicating its recognition as a public road. *Louisville & Nashville R. Co.* v. *Hames,* 135 *Ga.* 67 (68 S. E. 805); *Penick* v. *County of Morgan,* 131 *Ga.* 385 (62 S. E. 300). The road which is shown by the evidence to have been used as a public road, being the road which parallels the railroad on the east, has been there only fourteen years. As to such road, no establishment by prescription has been shown; nor does the fact that one half mile of such road was worked by the county authori-

ties on one occasion establish its identity as a public road. Use by the public for twenty years, plus work or some form of dominion by the county authorities, was necessary so to identify it. If the road which was established fourteen years ago, and since that time has been used by the public as a road, is to have the benefit of the "field road" which was originally there, though located differently, to show use and possession by the public for twenty years, such "field road" must also have had the character of use by the public. We do not think a farm road or a field road, which is established for the benefit of the landowner, in order to allow ingress and egress to his fields, would constitute a road used by the public. The evidence to our minds fails to establish that the road originally laid out was ever used by the public generally. The road which was worked one time by the county authorities had been in use only fourteen years. In order for this road to maintain its character as a public road established either by prescription or dedication, it being admitted that it was not laid out formally by the county authorities, it must appear that it has been used by the public for twenty years, and that the county authorities have performed such acts as will clearly indicate that they have accepted it as a public road.

In *Savannah, Florida & Western Ry. Co.* v. *Gill,* 118 *Ga.* 737, 748 (45 S. E. 623), it was said: "In reference to the length of time in which a road must be used by the public as a highway in order to establish a prescriptive right to it as such, most of the courts hold that it must be used for a period of time conforming to that necessary to establish title to real estate by prescription." It was said in the *McCoy* case, supra, that the evidence to show that such road has been accepted by the county authorities, "should be such in character and extent as to clearly indicate such acceptance," or "in such manner and to such an extent as to show an acceptance by them." Judge Beck further said: "It is enough if, in addition to such user for that time, there should have been acts of the county authorities of the character and to the *extent* above stated." (Italics ours.) "One swallow proveth not that summer is near," is an old saying. We will not attempt to say that the one working of the road one half mile to a private house, at the time and in the manner in which it was done, would not, under other facts, be sufficient to show an acceptance by the county au-

thorities. This fact is a circumstance which may be considered. It is met in this case, however, by the positive testimony of the superintendent of roads, who had them in charge for twenty-five years, that it was not a public road, and by the county employee who did the work, that it was a private road, and that it was the custom for private ways to be worked by county forces. We can not say that the evidence was sufficient to establish this crossing as a public crossing, and thereby place upon the defendant the duty of complying with the blow-post statute, and make its failure so to do such negligence as will fix its liability to one injured on such crossing. Under this view of the case the judge erred in overruling the motion for new trial.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*