**Lesa Key BIGGERS, On behalf of minors Timothy Byron KEY, Jennifer Lorraine Key, and William Jason Key, Plaintiff,**

v.

**SOUTHERN RAILWAY COMPANY, and City of Duluth, Defendants.**

Civ. No. 1:90–CV–1710–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 17, 1993.

---

Christopher David Langley, Decatur, GA, for plaintiff.

Edgar A. Neely, Jr., William C. Thompson, Neely & Player, R. Clay Porter, Craig Peter Siegenthaler, Dennis, Corry, Porter & Gray, Atlanta, GA, for defendants.

**ORDER**

CARNES, District Judge.

This case is presently before the Court on plaintiff's motion for leave to file supplemental reply brief [# 81–1], plaintiff's motion to strike "Exhibit H" to defendant City of Duluth's reply [# 77–1, # 64–1], plaintiff's motion for partial summary judgment [# 72–1, # 40–1], defendant City of Duluth's motion to file motion to dismiss [# 66–1], plaintiff's motion to reopen record to allow rebuttal evidence to "Exhibit H" [# 64–2], defendant City of Duluth's motion for summary judgment [# 38–1], defendant Southern Railway Company's motion for summary judgment [# 39–1, 39–2], defendant Southern Railway's motion to file excess pages limitation [# 44–1], and plaintiff's motion to strike defendant Southern Railway's brief in support of motion for summary judgment [# 41–1].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, grants plaintiff's motion for leave to file supplemental reply brief [# 81–1], denies plaintiff's motion to strike "Exhibit H" to defendant City of Duluth's reply [# 77–1, # 64–1], denies plaintiff's motion for partial summary judgment [# 72–1, # 40–1], denies defendant City of Duluth's motion to file motion to dismiss [# 66–1], denies plaintiff's motion to reopen record to allow rebuttal evidence to "Exhibit H" [# 64–2], grants defendant City of Duluth's motion for summary judgment [# 38–1], grants in part and denies in part defendant Southern Railway Company's motion for summary judgment [# 39–1, 39–2], denies defendant Southern Railway's motion to file excess pages limitation [# 44–1], and denies plaintiff's motion to strike defendant Southern Railway's brief in support of motion for summary judgment [# 41–1].

**A. Facts**

On August 4, 1989 at approximately 12:40 a.m., Stephen Key, the decedent, was involved in a fatal collision involving his van and a train owned and operated by Southern Railway. The decedent was employed as a welder by Southeastern Railway, and his work shift on the night of the collision ended at approximately 12:30 a.m. The railroad crossing where the collision occurred is located within the geographical limits of the City of Duluth, Georgia and is sometimes referred to as "Parson's Crossing." Plaintiff asserts that a railroad crossbuck sign and a stop sign were the only signs on the west entrance to Parson's Crossing. Duluth and Southern Railway contend, however, that there were two crossbuck signs and a stop sign.

On March 4, 1988, Southern Railway and the Georgia Department of Transportation had entered into an agreement concerning the installation of signals at Parson's Crossing. The contract was modified in February 1989. The new signals had not been installed by the time of this incident, however.

The plaintiff, Lesa Key Biggers, has brought suit on behalf of her three minor children against Southern Railway Company ("Southern Railway") and the City of Duluth ("Duluth"). Plaintiff alleges that both the City of Duluth and Southern Railway were negligent and caused the accident.

Originally, two other plaintiffs were also parties to the suit, but those plaintiffs have dismissed their claims. Plaintiff Lesa Biggers has filed an amended complaint that

reflects the dismissal of the other plaintiffs. Because the parties have expressed some confusion as to which complaint controls in this case, the Court declares that the amended complaint is the operative complaint for the suit.

## B. *Defendant City of Duluth's Motion for Leave to File Motion to Dismiss*

■ After it had filed a motion for summary judgment, Defendant Duluth filed a "Motion for Leave to file a Motion to Dismiss." Duluth asserted that it had recently learned that the 1990 amendment to Article I, Section II, Paragraph IX of the Georgia Constitution removed Duluth's waiver of sovereign immunity and provided that a city would be immune from a torts-based lawsuit unless the Georgia General Assembly passed a State Tort Claims Act which specifically waived a city's sovereign immunity. In its motion to dismiss, Duluth cited several Georgia Superior Court orders in which the Superior Court judges had found that the constitutional amendment applied to incidents that occurred before the amendment became law.

In March 1992, plaintiff filed a motion for leave to file a supplemental reply brief to Duluth's motion. The Court now grants plaintiff's motion. In that motion, plaintiff submitted a copy of the Georgia Supreme Court opinion, *Donaldson v. Department of Transportation of Georgia,* 262 Ga. 49, 414 S.E.2d 638 (1992), which upheld the validity of the constitutional amendment and held that the amendment should not apply retroactively.

The Court denies Duluth's motion for leave to file a motion to dismiss, because the motion would be futile. The Georgia Supreme Court has now resolved the issue and, because the accident happened before the constitution was amended, sovereign immunity is not a defense for Duluth.

## C. *City of Duluth's Motion for Summary Judgment*

### 1. Objections to Exhibits

■ Plaintiff and Duluth object to several of each other's exhibits offered in support of the motions for summary judgment. Even though Rule 56(c) seems to prohibit the Court's consideration of any evidence other than pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, a court may consider any materials that would be admissible at trial when deciding a motion for summary judgment. *Cash Inn of Dade, Inc. v. Metropolitan Dade Co.,* 938 F.2d 1239 (11th Cir.1991).

■ Plaintiff asserts that the Court should not consider six of the affidavits that defendant Duluth has offered. Plaintiff contends that the affidavits violate Rule 56(e) of the Federal Rules of Civil Procedure because the affiants did not have personal knowledge of the facts in the affidavits.[1] In response, Duluth submitted new affidavits from the individuals in which the affiants specified more carefully that their testimony was based upon their personal knowledge. The Court holds that the new affidavits are sufficient under Rule 56(e) and overrules plaintiff's objection.

Plaintiff raises several other objections to Duluth's exhibits and arguments in support of summary judgment. In plaintiff's Objections 1 and 3, plaintiff does not object to the sufficiency of the evidence but instead argues about the credibility of the witnesses and the inferences to be drawn from the evidence. The Court will overrule plaintiff's objections to the extent that plaintiff seeks to preclude the Court from considering defendant's exhibits and arguments. Of course, the Court will consider plaintiff's contentions in determining if a question of fact exists.

■ Finally, plaintiff objects to Exhibit "H" in Duluth's reply brief. Exhibit H is a certified copy of a state map from the Georgia Department of Transportation. Plaintiff has moved for the Court to strike the exhibit or to allow plaintiff to rebut the evidence. Plaintiff claims that the map violates Rule 901 of the Federal Rules of Evidence, which requires authentication of documents. De-

---

**1.** Rule 56(e) provides in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be ad- missible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED.R.CIV.P. 56(e).

fendant Duluth has offered the Treasurer of the Department of Transportation's certified statement declaring that the map is a true and accurate copy of the official highway and transportation map.

Rule 902(5) of the Federal Rules of Evidence provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to official public documents. The rule defines official public documents as "[b]ooks, pamphlets, or other publications purporting to be issued by a public authority." FED.R.EVID. 902(5). The map at issue is published by the Georgia Department of Transportation and is a "publication purporting to be issued by a public authority" described in Federal Rule of Evidence 902(5). Since the map is admissible under Rule 902(5), the Court denies plaintiff's motion to strike the map.

Plaintiff has requested that the Court allow it to offer rebuttal evidence if the Court does not strike the map. Plaintiff, however, had the opportunity to challenge the content of the map in her response to defendant's motion for summary judgment. Moreover, the Court does not need rebuttal evidence in order to recognize the inherent limitations of such a map. Therefore, the Court denies plaintiff's motion.

■ Defendant Duluth has also objected to several of plaintiff's exhibits. First, Duluth has moved to strike plaintiff's Exhibit 3. Duluth asserts that a private company made the map, and therefore, the map is not an admissible public document under Rule 902(5). Further, plaintiff has not offered any affidavit or deposition testimony authenticating the document pursuant to Rule 901. Since the exhibit has not been authenticated pursuant to Rule 901 of the Federal Rules of Evidence, the Court grants defendant's objection and will not consider the map in deciding the motion for summary judgment.

■ Duluth also contends that plaintiff has not authenticated Exhibits "1" and "2" in its responsive pleadings. Exhibits 1 and 2 are plat maps that plaintiff has offered. Duluth asserts that plaintiff has not authenticated or laid a foundation for the maps. Rule 902(4) of the Federal Rules of Evidence provides

that extrinsic evidence of authenticity is not necessary with respect to certified copies of public records. Plaintiff, however, has not offered certified copies of the plats or shown that the plats are an official publication of Gwinnett County. Plaintiff has also not offered any other rule of evidence under which the plats are admissible. Therefore, the Court grants defendant's objections to the plats.

■ Likewise, defendant Duluth objects to Exhibits "6" and "7" in plaintiff's motion for partial summary judgment because plaintiff has not offered any authentication for Exhibits "6" and "7". Exhibits "6" and "7" contain copies of a contract involving Southern Railway and the Georgia Department of Transportation. Plaintiff has offered no affidavits from any person who could identify the contracts. Since plaintiff has presented no authentication for the contracts, the Court strikes the contracts.

■ Duluth also objects to the plaintiff's exhibit containing testimony by Peter Grivas that Mr. Grivas gave as a witness in a workers' compensation hearing related to the plaintiff. Duluth contends that Mr. Grivas' testimony is hearsay and that defendant Duluth was not involved in the case from which the testimony arose. Rule 56(c) does not provide for the Court's consideration of prior testimony in summary judgment motions, unless the testimony is in the form of deposition or affidavit. Therefore, the Court must determine if the evidence would otherwise be admissible at trial. *See, Cash Inn of Dade, Inc. v. Metropolitan Dade Co.,* 938 F.2d 1239 (11th Cir.1991).

Rule 804(b)(1) provides that prior testimony is not hearsay if the declarant is unavailable as a witness and if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by cross-examination. FED. R.EVID. 804(b)(1). Plaintiff has not produced any evidence that Mr. Grivas was unavailable for a deposition. Additionally, defendant Duluth did not have an opportunity to cross-examine Mr. Grivas at the time he gave the prior testimony. The Court accordingly strikes his testimony.

Finally, defendant Duluth objects to plaintiff's Exhibit 4 in its response. Duluth contends that plaintiff has not provided a certified copy of these plats. The copy provided to the Court is certified, however. Extrinsic evidence of authenticity is not required for certified copies of public records. FED. R.EVID. 902(4). Because plaintiff provided the Court with a certified copy, the Court denies defendant Duluth's objections. Duluth also requests that the Court disregard plaintiff's attorney's notes on the plat, which the Court will do.

### 2. Standard for Summary Judgment

 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party must show the district court that there is an absence of evidence on an essential element to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant carries his burden of asserting the basis for his motion, the nonmoving party is then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. Summary judgment is mandated against the nonmoving party if he does not come forward with specific evidence of *every* element material to his case, so as to create a genuine issue for trial. *Id.* at 323, 106 S.Ct. at 2552.

### 3. Discussion

The City of Duluth has moved for summary judgment on two grounds. First, Duluth contends that it cannot be liable to plaintiff unless it owns the road or the road is a public road. Second, Duluth maintains that even if it did own the road or the road were public, as a matter of law, Duluth was not negligent and it did not create a nuisance.

### (a) Did Duluth have a duty to maintain the road?

 With regard to the first ground, Duluth concedes that if the road were public or if it owned the road, Duluth would have a duty to passengers on the road.[2] Duluth, however, asserts that it does not own the road. Duluth submits that it asked attorney William A. Hamilton to perform a title search on the roadway and his results showed the roadway is owned by two individuals across whose property the roadway runs. Duluth also claims that the driveway is taxed as private property. Plaintiff, on the other hand, maintains that the Gwinnett County tax records do not support an inference that the roadway is taxed as a private driveway.[3]

The Georgia Court of Appeals has held that "legal conclusions as to ownership contained in the affidavits will not support the grant of summary judgment." *Daniel v. Georgia Power Co.*, 146 Ga.App. 596, 247 S.E.2d 139 (1978). In this case, however, plaintiff, who has the burden of proof, has not offered any evidence suggesting that Duluth owns the roadway. Duluth has shown that the roadway is taxed as private property and that a title search indicates the roadway is private. Since plaintiff has not responded with any evidence, the Court holds that plaintiff has offered no evidence that Duluth owns the roadway and accordingly grants summary judgment for Duluth on any theory of liability predicated on its ownership of the roadway.

---

**2.** Duluth cites *Daniel v. Georgia Power Co.*, 146 Ga.App. 596, 247 S.E.2d 139 (1978) (owner of land who expressly or impliedly induces others to come upon his premises is liable in damages for injuries occasioned by his failure to exercise ordinary care) and *Richards v. Mayor & City Council of Americus*, 158 Ga.App. 693, 282 S.E.2d 122 (1981) (municipalities primarily are responsible for the safe condition of the municipal street system) supporting its concession.

**3.** Plaintiff asserts that the "Record of Ownership" cards on file for the two individuals do not show the road appraised as an improvement on the west side of the tracks. The cards do show, however, an unimproved road on the property and this would appear to suggest that, at least for tax purposes, the road is considered to be owned by these individuals. Plaintiff has offered no other explanation why the tax records do not support Duluth's argument that the roadway is taxed as private property.

Plaintiff has also alleged that Duluth is liable because the road is a public road. Duluth maintains that the roadway is not a public road. There are four ways a "public road" can be established: (1) by legislative act, (2) by formal proceedings by the county authorities establishing it, (3) by dedication, or (4) by prescription. *See, McCoy v. Central Railway Co.,* 131 Ga. 378, 62 S.E. 297 (1908). Duluth asserts that none of those procedures have occurred in this case. Plaintiff has argued in her brief only that the roadway became public through dedication or prescription. The Court therefore finds that plaintiff does not dispute that there have been no formal proceedings by Duluth and no legislative acts designating the roadway a public road.

Plaintiff contends that the roadway may have become a public road through the process of dedication. In order for land to be dedicated to public use, the owner must expressly or impliedly offer to dedicate the land, and the appropriate public authorities or the public must expressly or impliedly accept the land. *Bryant v. Kern and Co.,* 196 Ga.App. 165, 395 S.E.2d 620 (1990). Duluth maintains that because the owners of the roadway did not offer it to the public and because Duluth did not accept the roadway, no dedication occurred.

In order for plaintiff to show a dedication, plaintiff must show the owner's intention to dedicate the land. *Dunaway v. Windsor,* 197 Ga. 705, 30 S.E.2d 627 (1944). Since plaintiff has not offered any evidence that the owners expressly dedicated the roadway to Duluth, plaintiff must contend that the owners impliedly offered the roadway. When a party claims that an implied dedication has occurred, the facts must clearly indicate the owner's purpose to abandon his personal dominion over the property and to devote it to a definite public use. *Lines v. State,* 245 Ga. 390, 264 S.E.2d 891 (1980). In this case, a jury could find that the owners had impliedly dedicated the roadway to the public, because the owners may have abandoned the road for use by the public to travel to the businesses on the road. On the other hand, a jury could find that the owners had no intention of abandoning the land to

the public but were simply allowing the other businesses to use their property.

In order to avoid summary judgment, however, plaintiff must also demonstrate that a genuine issue of material fact exists regarding the public's acceptance of the road. Plaintiff asserts that because "public funding" was used to improve the railroad crossing, the public has accepted the road and Duluth is liable for maintaining the road.

Assuming, however, that the use of public funds on the railroad crossing would constitute acceptance of the roadway by public authorities, plaintiff has not offered competent evidence to show that public funding was spent on the railroad crossing. The Court struck the exhibits that plaintiff offered in support of its argument and plaintiff, who bears the burden of proof in this case, has not offered any other evidence to show that public funds were spent on the crossing. Accordingly, the Court grants summary judgment for Duluth on any theory of liability predicated on the road's status as a public road through dedication.

Although plaintiff also states that the roadway has become a public road through prescription, plaintiff does not in fact argue that the roadway became public through prescription, but instead argues that "Parson's Road" has always been and remains a public road. Plaintiff asserts that at one time a public road existed leading south from the City of Duluth toward Norcross. The road crossed the railroad tracks at what is now Parson's Crossing. Plaintiff contends part of the roadway was later moved and became part of "South Old Peachtree Road," but Parson's Crossing remained where it is now and remains a public road. Plaintiff claims, therefore, that the roadway has at all times been a public road and that Duluth has never acted to remove it from the public domain.

Plaintiff, however, has not submitted sufficient evidence in support of these arguments to escape summary judgment on this issue. First, plaintiff offers two plats in Exhibits "1" and "2", which the Court struck from the

record.[4] Plaintiff has also offered two plats of the area from 1960 and 1971 in Exhibit 4 and a current map in Exhibit 5. These maps do not show any evidence that could be construed to show that "South Old Peachtree Road" formerly continued where "Parson's Road" now lies. The 1971 plat does not contain the area where Parson's Road is today, and the 1960 plat does not show a street above the railroad tracks between Creek Road and Pittard Road, where Parson's Crossing lies. Plaintiff has offered no affidavit or deposition testimony to support her theory. The Court holds that plaintiff has not created an issue of fact, and the Court also grants summary judgment for defendant Duluth as to the road's status prescription.

In summary, the plaintiff has not created an issue of fact on any theory that would create a duty of care on the part of the City of Duluth with regard to the railroad crossing area in question.[5]

(b) Assuming a duty of care, has Duluth shown that it was not negligent, as a matter of law

Although the Court has already ruled that Duluth owed no duty of care with regard to the safety of the railroad crossing in issue, it will also address Duluth's motion for summary judgment on negligence grounds, some grounds of which provide an independent basis for granting summary judgment for Duluth. Plaintiff has alleged that Duluth failed to maintain the road surface, provide signs and warnings, provide pavement markings, ensure that visibility was not inhibited, and participate in the proper design of the crossing. Duluth responds that it was not negligent as a matter of law.

■ Plaintiff asserts in her complaint that the pavement in the crossing was not repaired. Duluth claims that under O.C.G.A. § 32-6-190, Duluth has no duty to maintain the pavement within the crossing. Section 32-6-190 provides:

> Any railroad whose track or tracks cross a public road at grade shall have a duty to maintain such grade crossings in such condition as to permit the safe and convenient passage of public traffic. Such duty of maintenance shall include that portion of the public road lying between the track or tracks and for two feet beyond the ends of the crossties on each side of such crossing.

O.C.G.A. § 32-6-190 (1991). Under the plain language of the statute, Duluth does not have a duty to maintain the pavement in the grade crossing—only the railroad has such a duty. Plaintiff has cited no Georgia cases that have held a city is liable for the pavement in the crossing. Therefore, the Court grants summary judgment for Duluth with regard to any claim that it was negligent in maintaining the pavement in the crossing.

■ Plaintiff also contends that Duluth was negligent in failing to install crossing gates and other warning devices and in failing to mark the western entrance with street markings and signs. Duluth responds that the law only requires that a "distinctive sign" be erected at the approach to a railroad crossing and that that a cross buck sign is a "distinctive sign." *Seaboard C.L.R. Co. v. Sheffield*, 127 Ga.App. 580, 582, 194 S.E.2d 484 (1972). In this case, Duluth further avers that a cross buck and a stop sign were

---

4. Even if the Court had considered these plats in the motion for summary judgment, plaintiff has not articulated any connection between the plats and the current placement of Parson's Road.

5. As a result of the Court's ruling striking some of the plaintiff's exhibits, the Court is obviously looking at a different record than that believed to be the record by the plaintiff when she drafted her response to Duluth's motion for summary judgment. Because of this fact, and because the numerous and voluminous pleadings render it difficult to reconstruct an argument that plaintiff might have made had she known that certain of her exhibits would have been struck, the Court will consider any motion to reconsider by plain-

tiff that identifies evidence that would create a disputed issue of fact with regard to questions bearing on whether Duluth had a duty of care and that explains, with precision, why any such disputed issue of fact would warrant a denial of summary judgment. If, for example, plaintiff contends that, notwithstanding the striking of certain exhibits, there was still evidence to show that public funds were used on the crossing, for purposes of a dedication argument, plaintiff should identify that evidence and should also explain why expenditure of money by the State on the crossing would constitute acceptance by the City of Duluth of the private road.

present and it is not liable for its failure to install any additional signs. § 32–6–200 provides for the installation of protective devices at grade crossings. The section explains that a municipality may order the protection of a grade crossing. The expense of acquiring and installing a protective device would be shared between the municipality and the railroad involved. O.C.G.A. § 32–6–200(b)(1)(B) (1991). The railroad, however, must maintain the protective devices at its own expense. O.C.G.A. § 32–6–200(b)(3) (1991). Section 32–6–200(b)(3) also provides that "nothing in this subsection shall be construed to impose any public liability on ... any municipality in any manner regarding such devices." *Id.*

In *Hancock v. City of Dalton*, 131 Ga.App. 178, 205 S.E.2d 470 (1974), the plaintiff brought a suit against the City of Dalton for maintaining a nuisance when it failed to erect and maintain automatic signals at a railroad crossing—a claim similar to that raised by plaintiff here. The Georgia Court of Appeals held that a city has no duty with regard to automatic signals, except to require their installation under the statute.[6] *Id.*, 131 Ga. App. at 178, 205 S.E.2d 470. Because plaintiff has cited no authority in support of its argument that Duluth had a duty to install the signals and warnings for the train, plaintiff cannot assert claims alleging that Duluth created a nuisance when it did not add warnings to the crossing, *id.*, and the Court grants summary judgment on this claim.

■ Duluth also argues that it should be granted summary judgment with respect to plaintiff's contention that Duluth should have added supplemental lighting to the crossing. Section 32–4–92 provides that a municipality "may" provide lighting on any public road located within its limits. O.C.G.A. § 32–4–92 (1991). Defendants assert, therefore, that the municipality has no duty to provide lighting if it does not choose to provide the lighting.

The plain language of the statute supports defendant Duluth's argument that it is not liable for a failure to place street lighting.

Plaintiff has not provided the Court with any authority to the contrary. The Court grants defendant's motion for summary judgment on this claim.

Finally, plaintiff contends that Duluth was negligent for failing to cut or to remove vegetation that obscured the view of motor vehicle operators who approach the crossing from the west. Duluth does not dispute that it has a duty to cut or to remove vegetation. Duluth maintains that plaintiff has shown no evidence to support its allegations that vegetation would obscure a motorist's view. Plaintiff's exhibits, however, show that a motorist's view could be obscured when stopped at the stop sign. On this claim of negligence, and this claim alone, the Court finds that, were Duluth held to a duty of care concerning the crossing, factual issues do remain.

Accordingly, even had the Court not granted summary judgment with respect to Duluth's "ownership" of the road, the Court would still have granted summary judgment as to all claims of negligence, except that claim relating to the failure to remove vegetation. Inasmuch as the Court has found no evidence that would suggest a disputed question of fact on the public status of the roadway, it GRANTS summary judgment for the defendant City of Duluth as to all claims.

D. *Plaintiff's Motion for Summary Judgment*

■ Plaintiff has moved for summary judgment against Southern Railway on several grounds. First, plaintiff asserts that defendant Southern Railway is negligent as a matter of law because it did not have a sign to warn approaching rail traffic of a grade crossing and therefore failed to comply with O.C.G.A. § 46–8–198. Plaintiff also contends that Southern Railway violated O.C.G.A. § 46–8–191(a) because it failed to ring its bell appropriately before the crossing. Plaintiff further asserts that Southern Railway's lack of due care in avoiding injury to decedent when his peril became known is negligence as a matter of law. Finally, plaintiff claims

---

6. While this sentence seem internally contradictory, a full reading of the case indicates that the Court held that the defendant city there had no duty to install signals at the railroad crossing in question, just as the defendant City of Duluth had no duty to install any further signs in this case.

in her argument that Southern Railway was negligent per se when the conductor failed to file an incident report pursuant to O.C.G.A. § 46–8–210.[7]

■ In plaintiff's motion for summary judgment, plaintiff contends that Southern Railway was negligent per se because it violated O.C.G.A. § 46–8–191(a) that provides:

> Within the corporate limits of cities, a railroad company shall not be required … to blow the whistle of its locomotives in approaching a crossing in said corporate limits. However, in lieu thereof, the engineer of each locomotive shall be required to signal the approach of his train to such crossing … by constantly tolling the bell of the locomotive …

O.C.G.A. § 46–8–191(a) (1992). Plaintiff contends that Southern Railway should have been ringing its bell. The testimony shows that the conductors were blowing the train's whistle, which would also comply with the statute. The testimony is somewhat conflicting, however, as to the time at which the train blew the whistle. Plaintiff has not shown that no material question of fact exists concerning the timing of the whistle. Therefore, the Court denies summary judgment to plaintiff on this issue.

■ Plaintiff also contends that the conductors on the train failed to keep a vigilant look-out for motor vehicles on the tracks, in violation of O.C.G.A. § 46–8–191(b). Conflicting evidence exists concerning when the conductors noticed the truck and how quickly the conductors reacted to it. The Court denies summary judgment for plaintiff on this issue also.

■ Lastly, plaintiff alleges that Southern Railway was negligent per se because the conductors failed to file a report about the accident as required by O.C.G.A. § 46–8–210. Southern Railway contends that the conductors did file a report, and it has attached the report to its pleadings. A question of fact exists as to whether the report was filed, and, therefore, the Court denies summary judgment for plaintiff on this claim.

### E. Defendant Southern Railway's Motion for Summary Judgment

Defendant Southern Railway has moved for summary judgment on several grounds. Southern Railway first maintains that plaintiff's own negligence bars him from recovering against Southern Railway. Second, Southern Railway contends that federal law preempts several of plaintiff's common law claims.

Section 46–8–291 of the Georgia Code provides that no person shall recover damages from a railroad for an injury that is caused by his own negligence. O.C.G.A. § 46–8–291 (1992). If both the plaintiff and the railroad are at fault, the plaintiff may recover, but his damages shall be diminished by the jury in proportion to plaintiff's fault. Id.

■ Defendant Southern Railway asserts that where a driver of a car is aware of an approaching train and attempts to beat the train across the tracks, the railroad is not liable. The Court cannot find as a matter of law that decedent attempted to beat the train across the tracks, however. A question of fact exists concerning whether the decedent saw the train and attempted to beat it.

■ Southern Railway also maintains that under Georgia law, if the decedent should have seen the train, then the railroad is not liable for negligence if an accident occurs. Plaintiff, however, has raised a question of fact as to whether the decedent could have seen the train. According to plaintiff, the decedent's view may have been obstructed by vegetation, and the warnings were not adequate for a crossing where the train approaches rapidly after appearing around a curve. Therefore, the Court cannot determine as a matter of law that the decedent's negligence caused the accident and bars plaintiff's suit. The Court, therefore, denies defendant Southern Railway's motion for

---

7. Plaintiff also appears to argue that the Court should grant summary judgment on the basis of O.C.G.A. § 46–8–292, which provides that proof of injury by a train is prima-facie evidence of the lack of reasonable skill and care on the part of the railroad company. Because defendant has responded with evidence creating questions of fact on its lack of reasonable skill and due care, the Court holds that proof of injury is not sufficient for summary judgment.

summary judgment based on decedent's negligence.

■ Southern Railway further argues that it is not liable for plaintiff's state common law claims concerning the train speed, vegetative growth, and adequacy of signals, because they are preempted by the Federal Railroad Safety Act, 45 U.S.C. §§ 421–445 (the "FRSA"). The FRSA was a consequence of a report from a task force on railroad safety that had noted the problems resulting from the variety of state safety regulations. *Easterwood v. CSX Trans., Inc.*, 933 F.2d 1548, 1552 (11th Cir.1991). The FRSA grants the Secretary the authority to establish "rules, regulations, orders, and standards for all areas of railroad safety supplementing provisions of law and regulations in effect on October 16, 1970 ..." 45 U.S.C. § 431(a) (1986). The FRSA's section concerning preemption provides in part:

> ... A state may adopt or continue in force any law, rule, regulation, order or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement ...

45 U.S.C. § 434 (1986).

Defendant Southern Railway first asserts that plaintiff's claims based upon the speed of the train are preempted. In her complaint, plaintiff alleges that the train was traveling at 58 miles per hour. The complaint, therefore, does not support any allegations that the train was traveling at a speed greater than the federal speed limit of sixty miles per hour on the track at issue.[8]

The Eleventh Circuit addressed the question of preemption under the FRSA in *Easterwood v. CSX Trans., Inc.*, 933 F.2d 1548 (1991). In *Easterwood*, the plaintiff also claimed that the train was traveling at a negligent rate of speed, even though the train was within the federal speed limit. The

court noted that the Secretary has established regulations concerning the maximum speed for passenger and freight trains for various classes of track. 933 F.2d at 1553 (citing 49 C.F.R. 213.9 (1990)). The court, therefore, found that the claim was preempted since Congress stated that when the Secretary establishes a safety regulation, all state regulations covering the same area are pre-empted. *Id.*

■ Under *Easterwood*, therefore, plaintiff's claims that the train was traveling at a negligently high rate of speed when it was complying with the federal speed limit are preempted.[9] The Court grants defendant Southern Railway's motion for summary judgment on this claim.

■ Defendant Southern Railway next contends the FRSA pre-empts plaintiff's claims that vegetation near the tracks obstructed the decedent's view and caused the accident. The Secretary has promulgated a regulation concerning vegetation that provides:

> Vegetation on railroad property which is on or immediately adjacent to roadbed must be controlled so that it does not ... (b) Obstruct visibility of railroad signs and signals ...

49 C.F.R. § 213.37 (1991). Because the Secretary has chosen to regulate vegetation on or immediately adjacent to the roadbed, Congress has explicitly pre-empted all state regulation in this area. *Easterwood*, 933 F.2d at 1554. The Secretary has not regulated vegetation that is not immediately adjacent to the roadbed, however. *Id.* Therefore, the Court grants summary judgment to Southern Railway as to any of plaintiff's claims pertaining to vegetation in the roadbed and immediately adjacent to it.[10] The Court, however, denies summary judgment on plaintiff's claims that vegetation near the track obstructed the decedent's view.

---

**8.** Plaintiff asserts in several of her later pleadings that the train was moving faster than 60 mph, but the Court will not consider that argument since she did not assert it in her complaint.

**9.** Plaintiff contends, without any citation of authority, that pre-emption does not occur if the road is a private road. Given the absence of any contrary authority, the Court holds that federal

regulations on speed pre-empt state law regardless of whether the road at the crossing was public or private.

**10.** Plaintiff does not appear to have raised a claim based upon a claim grounded on federal law in his amended complaint.

Defendant Southern Railway also contends that plaintiff's claims involving inadequate warning signals at the crossing are preempted.[11] The FRSA requires the Secretary to study problems with grade crossings, *see* 45 U.S.C. § 433, and to create crossing projects, *see* 45 U.S.C. § 431(a)(1). *Easterwood,* 933 F.2d at 1555. Congress also included a provision in the chapter dealing with federal aid for highway projects that requires states to conduct a systematic survey of all railroad crossings and to create and implement a schedule for bringing the grade crossings into compliance with the Manual on Uniform Traffic Control Devices for Streets and Highways. *See,* 23 U.S.C. § 130 (1990); 23 C.F.R. § 646.214(b)(1) (1990).

Courts have split on the question of whether federal grade crossing regulations preempt state law negligence clams against railroads for not providing sufficient warning control devices. One line of cases based upon the Ninth Circuit's opinion in *Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149 (9th Cir.1983), holds that pre-emption occurs once a state authority makes a factual determination about the adequacy of the warning control devices at the grade crossing. A second line of cases based upon the Eighth Circuit opinion in *Karl v. Burlington Northern Railroad Co.,* 880 F.2d 68, 76 (8th Cir. 1989), holds that federal law has not preempted negligence claims involving the inadequacy of existing warning control devices at railroad crossings.

The Eleventh Circuit noted that it did not believe that the Railroad–Highway Crossing section of the chapter on Federal–Aid to Highways pre-empts all state law. *Easterwood,* 933 F.2d at 1555. The court concluded that "[a]llowing tort suits to go forward against railroad companies simply does not affect the provision of federal aid to the states to help them build better railroad grade crossings." *Id.*

In *Easterwood,* the state authority wanted to upgrade the site but was unable to perform the upgrade due to various financial constraints and logistical problems. The Eleventh Circuit held that a "policymaker's failure to act is insufficient to constitute pre-emption." *Easterwood,* 933 F.2d at 1555. Therefore, the court did not reach the question of whether a federally sponsored upgrade would insulate the railroad from liability. The court did acknowledge in a footnote that, given its analysis of pre-emption, the court had reservations about the Ninth Circuit's holding in *Marshall.*

Here, the state authority had made a decision to upgrade the crossing, but the upgrades had not been fully implemented. Under *Easterwood,* this Court holds that preemption, if it occurs at all, would not have occurred before the upgrades were in place. The Eleventh Circuit suggests in *Easterwood* that pre-emption may never occur as to grade crossings. At the least, *Easterwood* suggests that pre-emption in this area should be considered cautiously. Since the upgrade had not yet been put into place, the Court finds that plaintiff's claims as to the warnings are not pre-empted. Therefore, the Court denies defendant Southern Railway's motion for summary judgment on this ground.

### Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for leave to file supplemental reply brief [# 81–1], denies defendant City of Duluth's motion to file motion to dismiss [# 66–1], denies plaintiff's motion to strike "Exhibit H" to defendant City of Duluth's reply [# 77–1, # 64–1], denies plaintiff's motion to reopen record to allow rebuttal evidence to "Exhibit H" [# 64–2], denies plaintiff's motion for partial summary judgment [# 72–1, # 40–1], grants defendant City of Duluth's motion for summary judgment [# 38–1], and grants in part and denies in part defendant Southern Railway Company's motion for summary judgment [# 39–1, 39–2], denies defendant Southern Railway's motion to file excess pages limitation [# 44–1], and denies plaintiff's motion to strike defendant Southern Railway's brief in support of

---

**11.** Defendant Southern Railway apparently concedes that if the road is private, pre-emption does not apply to the warning claims. The Court holds, however, that pre-emption would not apply to the claims regarding warning devices in this case, even if the road were public.

motion for summary judgment [# 41–1].[12] The Court also clarifies that the operative complaint in this suit is plaintiff's amended complaint.

SO ORDERED.

12. Because this Court does not have a rule prescribing page limits, the Court denies as moot defendant Southern Railway's motion to file excess pages and plaintiff's motion to strike defendant Southern Railway's brief in support of its motion for summary judgment.